Palmer H. RIMES and Patricia A. Rimes, Plaintiffs-Respondents,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellant.†

Supreme Court

*No. 81–387. Argued November 30, 1981.—Decided March 2, 1982.*

(Also reported in 316 N.W.2d 348.)

† Motion for reconsideration denied, with costs, on May 3, 1982. CECI, J., took no part.

For the appellant there were briefs by *Kenneth W. Forbeck* and *O'Neal, Noll, Elliott, Forbeck & Iglesias, S.C.,* of Beloit, and oral argument by *Kenneth W. Forbeck.*

For the respondents there was a brief by *Edward Grutzner* and *Grutzner, Byron & Holland, S.C.,* of Beloit, and oral argument by *Edward Grutzner.*

HEFFERNAN, J.   The question presented is whether an automobile insurer, State Farm Mutual Automobile Insurance Company, which, under a subrogation agreement signed by its insured, Palmer H. Rimes, has made payment under the medical-pay provisions of its policy, has the right to recover those payments out of the monies received by its insured in a settlement with negligent third-party tortfeasors and their liability insurers, when, according to the findings and judgment of the circuit court, the settlement figure was less than the total damages sustained by the insured as the result of an automobile accident.

The court found, after a post-settlement trial to the court, that Palmer and Patricia Rimes sustained damages in the amount of $300,433.54 and that the settlement

with the tortfeasors was $125,000. Accordingly, the circuit court, relying upon the rule of *Garrity v. Rural Mutual Insurance Company*, 77 Wis. 2d 537, 253 N.W.2d 512 (1977), concluded that an insurer was entitled to no recovery whatsoever in subrogation in circumstances where the insured was not made whole for his damages. The court summarized its findings and conclusions thus:

"In this case the plaintiff[s] settled their claims for $125,000.00. The Court has found that their damages far exceeded this sum. The settlement did not make the plaintiffs whole . . . .

"Since the plaintiffs have not been made whole by the settlement, the insurer may not share in the amount recovered through settlement from the tort-feasors."

The exact facts of the underlying automobile accident are of no particular importance at this stage of the proceedings. Suffice it to say that Palmer Rimes, who was traveling alone in his vehicle, insured with State Farm Mutual, came upon the scene of an accident in which a car driven by Peggy L. Stiles had rear-ended a vehicle driven by Roy A. Langdon. Because Rimes thought there might be injured persons in the vehicles in need of assistance, he was examining the Stiles vehicle when a car driven by Leonard A. Switzer struck the Stiles vehicle, causing severe injuries to Rimes.

The injured Rimes and his wife commenced an action in the circuit court for Rock County against the drivers of the three other vehicles involved in the accident and their insurers. Switzer was insured by Travelers Indemnity for the sum of $300,000. Stiles was insured by American Family Insurance Company in the amount of $50,000, as was Langdon. State Farm, Rimes' own liability insurance company, was joined as a defendant because of its possible subrogation rights as the result of payments under the medical-pay provisions of two separate automobile policies, one issued to Rimes and one

issued to his wife. The total payments made under the medical-pay provisions of the two policies amounted to $9,649.90. The two policies afforded identical coverage of $5,000, and each contained a subrogation agreement providing:

"Upon payment . . . the company shall be subrogated to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery which the injured *person* . . . may have against any *person* . . . and such *person* shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. Such *person* shall do nothing after loss to prejudice such rights."

Upon payment under the medical-pay provisions, Palmer H. Rimes signed subrogation receipts covering the payment of $9,649.90. The receipts provided:

"It is further warranted that no settlement has been made by the undersigned with any person or corporation against whom a claim may lie, and no release has been given to any one responsible for the loss, and that no such settlement will be made nor release given by the undersigned without the written consent of the said insurer, and the undersigned covenants and agrees to cooperate fully with said insurer in the prosecution of such claims and to procure and furnish all papers and documents necessary in such proceedings and to attend court and testify if the insurer deems such to be necessary."

State Farm attempted to enter into stipulations with the alleged tortfeasor-defendants to protect its subrogation rights but was unsuccessful in that attempt, and it filed an answer alleging its subrogation rights and participated in the case.

Immediately prior to the commencement of trial to a jury on January 21, 1980, the defendant Langdon and his insurance company, American Family, were dismissed with prejudice by a stipulation of all parties. On

that day also the remaining parties entered into a stipulation:

"That the defendant, State Farm Mutual Automobile Insurance Company, has a subrogation interest in recovery of those medical bills and expenses as a result of the payments made under the medical pay provisions of certain insurance policies . . . ."

The stipulation further provided:

"That should a judgment be rendered or a settlement be agreed upon between the parties which grants recovery of those medical bills and expenses, that the defendant, State Farm Mutual Automobile Insurance Company, shall recover the amounts paid under the medical pay provisions of its insurance policies as evidenced by the subrogation receipts . . . to the extent that such amounts are recovered by the plaintiff, Palmer A. Rimes."

On the second day of the trial, Rimes and his wife settled all of their claims with the remaining defendants for the sum of $125,000. American Family paid $50,000, its policy limits, on behalf of Stiles; and Travelers paid $75,000 of its $300,000 policy limit on behalf of Switzer. The stipulation provided that of the $75,000 paid by Travelers, $65,350.10 was paid directly to the plaintiffs and their attorneys, and $9,649.90 was paid into court to be held in escrow pending the outcome of a "trial" to the court concerning State Farm's claimed subrogation rights for the medical payments theretofore made on behalf of Rimes. The stipulation and order was signed by all parties, including State Farm. Included in its recitations was the provision:

"This action is fully settled as to all claims for relief and all cross claims by all parties, except as specifically otherwise provided by this order."

The stipulation and the order entered by the court contained the further provision:

"This action shall remain pending only insofar as a dispute exists between the plaintiffs, Palmer H. Rimes and Patricia A. Rimes, and defendant, State Farm Automobile Insurance Company, regarding the claims of State Farm Automobile Insurance Company and Palmer H. Rimes and Patricia A. Rimes to the sum of Nine Thousand, Six Hundred Forty-nine dollars and Ninety Cents ($9,649.90) to be paid into the court by Travelers Indemnity Company."

Subsequently, pursuant to the stipulation, the plaintiffs executed general releases of the defendants. By agreement of the remaining parties, the plaintiffs Rimes and State Farm, a two-day trial to the court was held. It was State Farm's position that the only issue to be determined was the amount that State Farm should recover under its subrogation rights and the only factual issue that needed to be determined was the percentage of negligence, if any, that was to be attributed to its insured, Rimes. The plaintiffs took the position that the principal issue was whether or not they had been made whole by the settlement for the injuries and damages sustained in the accident. The position of Rimes was that State Farm was to be allowed no subrogation recovery whatsoever if the court found that the damages in fact sustained by the plaintiffs exceeded the total of the settlement.

The trial court took testimony for two days in respect to the damages sustained as the result of injuries to Palmer Rimes and in respect to the negligence aspects of the accident. It concluded that Rimes and Langdon, both of whose vehicles had been rear-ended, were not negligent at all, that Stiles was 70 percent causally negligent, and Switzer was 30 percent causally negligent. In its findings of damages, it concluded that past medical and hospital expenses were in the amount stipulated by the parties—$26,560.70, that the plaintiff's past loss of earnings was in the amount of $65,855.34, that the damages

for past physical disability, pain, and suffering to the time of trial were in the amount of $35,000, that future medical expenses were reasonably computed to be in the amount of $20,517.50, that there was a loss of future earning capacity in the amount of $82,500, and damages for future physical disability, pain and suffering, inconvenience, humiliation and mental anguish were in the amount of $45,000. It also assessed damages to Patricia Rimes for the loss of consortium in the amount of $25,000. These damages totaled the sum of $300,433.54.

The trial court, relying upon *Garrity, supra,* concluded that, under this state of the record, only the amount of damages as found in the trial to the court would have been sufficient to make the plaintiffs whole and that, because the settlement fell short by over $175,000, the insurance company had no right of subrogation. Accordingly, it denied any subrogation payments to State Farm and ordered the escrowed amount of $9,649.90 delivered to the plaintiffs.

Appeal was taken by State Farm to the Court of Appeals. The Court of Appeals requested that this court accept the appeal on certification pursuant to Rule 809.61, Stats. Paraphrasing the argument of State Farm, the Court of Appeals in its petition for certification pointed out that the *Garrity* case, upon which the trial court relied, might not be appropriately determinative of the issue herein. It pointed out that *Garrity* involved fire insurance; that the policy limits were paid in *Garrity*; and, in addition, in the instant case, according to State Farm, the voluntary settlement by an injured party and the giving of a release was the legal equivalent of acknowledging that the injured party had been made whole. Because it was at least arguable that *Garrity* might not be precedential for the instant case, we accepted certification.

Although the facts in *Garrity* are not on all fours with those presented in the instant case, we conclude that the principles set forth therein are applicable and are decisive. Accordingly, we affirm.

In *Garrity*, the property owners were insured under a fire insurance policy with Rural Mutual Insurance Company. They suffered a fire loss to their barn and dairy when a negligently operated truck belonging to a feed mill burst into flames and caused the loss to the Garrity's property. The alleged fire loss exceeded the sum of the amount recovered under their fire policy and the policy limits on the vehicle driven by the negligent tortfeasor.[1] The fire insurance company claimed, however, that it had a right of priority in any recovery of monies from the third-party tortfeasor up to the amount that it, the fire insurer, had paid on the fire loss. The subrogation agreement in *Garrity* provided that:

" 'This Company may require from the insured an assignment of all right of recovery against any party for loss to the extent that payment therefor is made by this Company.' " P. 540.

The trial court in *Garrity* interpreted that subrogation agreement literally and, accordingly, permitted recovery by Rural Mutual up to the amount it paid on the fire loss. The subrogation agreement in the instant case between Rimes and State Farm is not significantly dissimilar and if literally interpreted would permit recovery by State Farm in the amount of medical payments made on behalf of Rimes. This court in *Garrity*, however, pointed out that the effect of "conventional subrogation" was the

---

[1] $67,227.12 was paid for the fire loss by Rural Mutual. The policy limits covering the operation of the truck was $25,000, while the loss as alleged in the complaint was $110,000. The parties agreed that the loss was in excess of Rural Mutual's payment under its fire policy. The total loss was not stipulated, but it appears that the alleged loss was not disputed.

same as "legal subrogation,"[2] which arises by application of the principles of equity, and that, accordingly, the contractual terms of subrogation agreements in an insurance policy were to be applied according to the rules of equity. We said that:

> " '[In equitable subrogation] no right of subrogation against the insured exists upon the part of the insurer where the insured's actual loss exceeds the amount recovered from both the insurer and the wrongdoer, after deducting costs and expenses. In other words, the insurer has no right as against the insured where the compensation received by the insured is less than his loss.' " P. 543.

Wisconsin has long held, as pointed out in *Garrity*, at 544, that the same rule applies to an insurer claiming subrogation under contract and that such insurer is to be allowed no share in the recovery from the tortfeasor if the total amount recovered by the insured from the insurer and the wrongdoer does not cover his entire loss. As *Garrity* points out, the entire law of subrogation is based upon equitable principles; and relying upon Williston, in *Garrity*, at 542, we stated:

> " 'A partial payment of the debt, even though it may be the full amount for which the surety has bound himself, will not entitle him to subrogation to the creditor's rights and securities.' "

Thus, even though an insured has recovered from a tortfeasor a sum more than sufficient to equal the sub-

---

[2] "The creature of equity, strangely enough, is known as legal subrogation as opposed to conventional subrogation, which is the product of an agreement between the parties. Conventional subrogation most commonly appears in standard policy provisions or loan receipts, but the distinction is meaningless in terms of the policy justifications for the doctrine. The primary reason for the adoption of subrogation is the principle of indemnity." Denenberg, *Subrogation Recovery: Who is Made Whole*, FIC Quarterly (Winter 1979) 185, 186.

rogated amount claimed by the insurer, the insurer is not entitled to subrogation unless the insured has been made whole for his loss. The purpose of subrogation is to prevent a double recovery by the insured. Under circumstances where an insured has received full damages from the tortfeasor and has also been paid for a portion of those damages by the insurer, he receives double payment—he has been made more than whole. Only under those circumstances is the insurer, under principles of equity, entitled to subrogation. Subrogation is to be allowed only when the insured is compensated in full by recovery from the tortfeasor. The insured is to be made whole, but no more than whole.

In the instant case, State Farm argues that *Garrity* is inapplicable because *Garrity* involved a property-damage fire case, where the total amount of damages is more easily determinable than the amount of damages sustained by plaintiff in a personal-injury action. While that is undoubtedly true, we see it as a distinction without a difference. The law of damages in personal-injury cases is premised upon the fact that the damages are reasonably ascertainable. The trial of a personal-injury action is based on that proposition, and we find the alleged difficulty of ascertainment of actual damages to be irrelevant to the merits of this case. Particularly, it is irrelevant when, in fact, the procedures adopted by the trial court were designed to determine with exactitude the actual damages sustained by Rimes. Whether the mini-trial procedure to the court which was utilized is appropriate to this purpose will be discussed further in this opinion.

It appears clear that, under Wisconsin law as recapitulated in *Garrity,* one who claims subrogation rights, whether under the aegis of either legal or conventional subrogation, is barred from any recovery unless the insured is made whole.

State Farm argues, however, that the fact that the plaintiffs gave a general release to the tortfeasors is "an affirmation by them that they have been made whole as required by law."

We think this overstates the characteristics of a release and settlement of a claim, particularly in a personal-injury case, where both the questions of liability and of damages prior to trial are to some degree in doubt. A pre-trial release in settlement is in fact usually appropriate only when such doubts exist. A release is merely the giving up of a right or claim, and it may or may not be for full consideration and may or may not make the grantor of the release whole. Moreover, a settlement is defined in *Webster's Third New International Dictionary* as "the satisfaction of a claim by agreement often with less than full payment."

Thus, it is apparent that the legal import urged by State Farm to be given to the settlement in this case is inappropriate. The most that can be said is that the plaintiffs gave up the right of action against the tortfeasors for consideration that may or may not have been sufficient to make them whole. No recital in any of the stipulations in this case evidences an acknowledgment by the plaintiffs that the settlement made them whole, and the very nature of settlements of personal-injury claims precludes a hypothesis that the grantor necessarily acknowledges full reimbursement for the wrong done.

It is particularly apparent in this case that the release by the plaintiffs was not an affirmation that they were made whole, because the very escrow agreement arose out of the contention by the plaintiffs that they were entitled to the $9,649.90 as a portion of the sum for which they would settle. By the escrow agreement contained in the stipulation it is apparent that the plaintiffs, even if we were to assume that they were acknowledging that the payment of $125,000 would be sufficient to make

them whole, believed that amount, less the $9,649.90, would make them less than whole. Thus, by no ratiocination can it be concluded under these cirmumstances that the plaintiffs' release of the tortfeasors was an acknowledgment of wholeness.

Moreover, neither the plaintiffs nor State Farm released the other in respect to the claim for the sum equal to the medical payments. This was the crux of the further litigation between them. Properly interpreted, we believe that the terms of the release and settlement and escrow agreement was a specific affirmation that the plaintiffs believed they were not made whole.[3]

State Farm also argues that, had the case gone to a verdict before the jury and had the total damages returned been $125,000, which sum included the $9,649.90 for medical expenses incurred in the first year after the accident, State Farm would clearly have been entitled to recover the latter amount as its claim in subrogation. While that is undoubtedly true, that fact is irrelevant, because, had such been the result of the trial, we would be obliged to conclude that the damages found by the jury made the plaintiff whole. Rimes, unless he paid over the amount of State Farm's claim, would have reaped a double recovery. The medical payments were made long before trial; and were Rimes to keep all the proceeds of the judgment plus the medical payments, he

---

[3] See *Hardware Dealers Mutual Fire Ins. Co. v. Ross*, 129 Ill. App 2d 217, 202 N.E.2d 618, 621 (1970), wherein the court held that it would not rule as a matter of law that a pre-trial settlement in legal effect made a settling plaintiff whole where settlement was for less than policy limits. The Illinois Appeals Court held that the question was one of fact, saying:

"The trial court found that the settlement . . . did not constitute full recovery [of damages for wrongful death]. . . . We must therefore accept the finding of the trial court that the settlement did not constitute full recovery . . . ." p. 621.

It concluded that the settlement did not make the plaintiff whole.

would have been made whole plus the medical payments previously received. This he may not do under the equitable principles of subrogation. The verdict, under the facts hypothesized by State Farm, would have advised the trial court that the sum of $125,000 made the plaintiff whole. The parties here, however, by their stipulation determined to forego a jury verdict as the test of wholeness. It is clear then that a payment of $125,000, unless that sum had been arrived at by a jury whose intent was to make the plaintiff whole, was irrelevant. Under the facts of this case, the payment of $125,000 was the price that the defendant tortfeasors were willing to pay to avoid the risk of greater exposure; and it was the sum that Rimes was willing to accept. It has nothing to do with the determination of whether Rimes was made whole.

Under Wisconsin law the test of wholeness depends upon whether the insured has been completely compensated for all the elements of damages, not merely those damages for which the insurer has indemnified the insured. Thus the mere fact that the settlement figure of $125,000 exceeded the insurer's claim for subrogation is immaterial. The injured or aggrieved party is not made whole unless *all* his damages arising out of the tort have been fully compensated.

■

We pointed out in *Garrity* that the cause of action against a tortfeasor is indivisible. Accordingly, it is only when there has been full compensation for all the damage elements of the entire cause of action that the insured is made whole. Thus only where an injured party has received an award by judgment or otherwise which pays all of his elements of damages, including those for which he has already been indemnified by an insurer, is there any occasion for subrogation. As we said in *Garrity:*

"[W]here either the insurer or the insured must to some extent go unpaid, the loss should be borne by the insurer for that is a risk the insured has paid it to assume." P. 542.

Only if the insured's tort damages make him whole is he required to disgorge the amounts by which he has been indemnified, *i.e.*, the insured cannot collect once in indemnity from the indemnitor and again in damages from the tortfeasor without being compelled to respond in subrogation. It is clear, in accordance with the general principles of subrogation accepted by this court and stated in *Garrity*, that the settlement in this case did not make the plaintiffs whole and that only compensation in the sum of $300,433.54 would have been sufficient. It was that sum, and nothing less, that would have sufficed to make the plaintiffs whole for the injuries.

The question remains, however, whether the method used by the trial court and acquiesced in by the parties was an appropriate one to determine the sum that would have made the plaintiffs whole. We confess that at first blush it appears to be awkward and inappropriate to proceed with a lawsuit which has been settled for the purpose of determining the damages that would have ensued had the settlement not have taken place. To some degree, the methodology adopted by the trial court defeats the very purpose of a settlement of a lawsuit—the avoidance of further litigation and the consequent saving of the resources of the parties and of the judicial system. It is unfortunate that the parties hereto, having settled the most serious questions of liability and damages amicably, could not have reached a compromise which could have avoided further litigation. Particularly, we find it diffi-

cult to justify the position of the insurer, which has already been paid a premium for the risk it assumed and which would have been obligated to make the medical payments irrespective of its insured's negligence and irrespective of whether or not a culpable third party could have been found. This is particularly true when there appears to be very little evidence that possible recoveries in subrogation are considered in the determination of insurance premiums.[4]

Be that as it may, the trial judge was confronted with a problem that required judicial resolution. As unnecessary as the procedure adopted should have been, we conclude that the methodology utilized was appropriate. The assumption on which the trial judge proceeded was that, under the circumstances, only a trial in which the various items of damages would be ascertained could determine what sum would have made the plaintiffs whole. Regrettable as we consider the necessity of having any trial at this tag end of a complicated lawsuit, we conclude the trial judge proceeded appropriately.

The question was how best to determine the probable outcome of a lawsuit which had already been settled.

A precedent, in a somewhat analogous situation, exists where a client sues an attorney for malpractice because

---

[4] "When the sum recovered by the Insured from the Tortfeasor is less than the total loss and thus either the Insured or the Insurer must to some extent go unpaid, the loss should be borne by the insurer for that is a risk the insured has paid it to assume." *St. Paul Fire and Marine Ins. Co. v. W.P. Rose Supply Co.*, 19 N.C. App. 302, 198 S.E.2d 482, 484 (1973).

See also Denenberg, *supra*, p. 185, citing *De Cespedes v. Prudence Mut. Cas. Co.*, 193 So. 2d 224, 227–228 (Fla. App. 1966), affd, 202 So 2d 561 (Fla. 1967), and 2 Richards, *Law of Insurance* (5th ed.), sec. 183, p. 654, for the proposition that anticipated recoveries under subrogation rights are not generally reflected in the computation of premium rates.

of the attorney's failure to bring suit before the cause of action is barred by the statute of limitations. In *Lewandowski v. Continental Casualty Co.*, 88 Wis. 2d 271, 276 N.W.2d 284 (1979), this court addressed that situation. The question was the value of the plaintiff's cause when his attorney's negligence barred him from bringing suit. The court therein reasoned that, given the admitted negligence of plaintiff's counsel, the measure of damages for malpractice was the sum that might have been recovered had the suit been timely brought. Accordingly, the trial court proceeded to the trial of the underlying, but limitations-barred, automobile-accident negligence case. The case was tried to a jury, and a verdict was submitted with the usual questions on negligence, causation, and damages. The verdict returned in respect to negligence and damages was accepted by the court. In *Lewandowski*, the issue was whether the trial court abused its discretion in permitting a trial and submitting to a jury the question of the plaintiff's damages on what had become a moot case. We held that the trial was appropriate for determining the value of the plaintiff's loss of his right to bring suit. The question to be decided in *Lewandowski* was what was the value of the claim had it been timely brought to trial. This is not unlike the situation in the instant case where the question is what sum would a finder of fact have found to be sufficient to make the plaintiffs whole had the cause of action gone to trial rather than being terminated by settlement. We held in *Lewandowski* that the trial judge acted appropriately and did not abuse his discretion. We said, "[I]t is our conclusion that the trial court chose the appropriate methodology to resolve the issue in this case." P. 281.

That conclusion is appropriate in respect to the methodology used by the trial court in this case in determining what sum would have made the plaintiffs whole. In this case, the trial judge was able to conduct the trial

without a jury, and this resulted in the saving of time and the resources of the parties and the court system.

While State Farm felt that the only issue that needed to be litigated was the question of its own insured's negligence, it is apparent that the determination of what sum would have made the plaintiffs whole—the damages sustained by the plaintiffs—was properly afforded primacy. Clearly, if the damages, as properly found by the trial to the court, exceeded those received in the settlement, the insured was not made whole. That was the result here, and the trial court correctly concluded that State Farm was not entitled to any of the proceeds of the settlement.

*By the Court.*—Judgment affirmed.

COFFEY, J. *(dissenting)*. I dissent because I believe that the case at bar is not controlled by the rule set forth in *Garrity v. Rural Mutual Insurance Company*, 77 Wis. 2d 537, 253 N.W.2d 512 (1977). Further, I believe that the majority's decision will not have a significant effect on the actual recoveries of injured plaintiffs while it will compel full-scale trials in cases where the plaintiff has already settled his principal claim and, thus, the decision is contrary to the policy interest in judicial economy. Finally, I dissent because the majority opinion places insurers in the embarrassing position of having to dispute the extent and validity of its own insured's case in order to exercise its statutorily permitted[1] right to subrogation where the insured settles its case.

---

[1] Sec. 632.32(4)(b), Stats., expressly provides that medical payments insurers are subrogated to the rights of its insured to the extent of their payments. This section reads as follows:

"(b) MEDICAL PAYMENTS. To indemnify for medical payments or chiropractic payments or both in the amount of at least $1,000 per person for protection of all persons using the insured motor vehicle from losses resulting from bodily injury or death. The named insured may reject the coverage. If the named insured

As the majority properly notes, the facts in *Garrity* differ from those presented in the instant case. I believe the critical distinction between this case and *Garrity* is the fact that in the case at bar, the plaintiffs voluntarily settled their entire claim for an amount less than the total limits of the available insurance monies, whereas, in *Garrity*, the plaintiff was seeking to recover all available insurance monies and it was assumed that that amount would be less than the total loss. This distinction is important because in the case at bar, had the plaintiffs fully litigated their case and had they received a favorable verdict, they would have undoubtedly been made whole[2] and the insurer could have collected on its subrogation claim. The fact that there was a settlement of this case is a matter generally favored by the law, but a settlement should not be forced or so encouraged as to allow it to become a vehicle for impairing the rights of another; in this case, the rights of the subrogated insurer. The majority's expansion of the *Garrity* rule that a subrogated insurer cannot share in the insured's recovery until the insured is made whole allows the insured to effectively eliminate the insurer's statutory right of subrogation, where, as in the case at bar, the insureds settled their entire claim for an amount less than the total available insurance monies and less than their total damages. I believe this result is both erroneous and inequitable.

rejects the coverage, it need not be provided in a subsequent renewal policy issued by the same insurer unless the insured requests it in writing. Under the medical or chiropractic payments coverage, the insurer shall be subrogated to the rights of its insured to the extent of its payments. Coverage written under this paragraph may be excess coverage over any other source of reimbursement to which the insured person has a legal right."

[2] We note that the total of available insurance monies was $350,000, nearly $50,000 in excess of the trial court's determination of the plaintiffs' damages.

This court has consistently acknowledged that "the purpose of the doctrine [of subrogation] is to avoid unjust enrichment." *Id.* at 541. Preventing the insurer from exercising its subrogation rights where an insured settles for less than the amount of available insurance policy limits and for an amount less than the insured's total loss, effectively bars the subrogor from recovering his payment from the wrongdoer and, thus, unjustly enriches not only the wrongdoer but also the insured who has been reimbursed for his damages by the settlement. Thus, the majority's decision contravenes the very equitable principles upon which the doctrine of subrogation rests.

Under the majority's decision, the insurer is barred from recovering any part of the monies it paid from either the wrongdoer or the insureds, although it is obvious that some portion of settlement is intended to compensate the insureds for the damages for which they were indemnified by the insurer. The majority justifies this result by stating that the insureds must receive full compensation for all their damages before they are made whole as their damages are indivisible. But, in actuality, doesn't an insured impliedly concede that he is being made whole by accepting a payment in settlement of his claim, especially where the payment is less than the total monies available under the insurance contracts? In a personal injury case, both the valuation of compensatory damages and the determination of relative fault are inexact and always open to dispute. In light of that fact, I believe it is fair and reasonable to assume that a party is made whole by the amount for which he voluntarily settles his entire claim. Further, the majority's conclusion that the settling of insureds' damages is indivisible ignores the fact that in reality the injured parties' actual medical expenses are the most readily determined and often serve as a measuring stick for

evaluating the plaintiffs' remaining compensatory damages.

This court has described subrogation as putting one to whom a legal right did not originally belong in the position of the legal owner of the right, and that the original right measures the extent of the new right.

"Subrogation has also been described as putting one to whom a particular right does not legally belong in the position of the legal owner of the right. Insofar as a new right is created in favor of the subrogee, 'the original right measures the extent of the new right.' 4 Williston, *Contracts* sec. 1265, p. 844 (Third ed 1967)." *Id.* at 541.

In this case, however, the majority allows the insureds to eliminate the right of action created by the doctrine of subrogation in the insurer by means of a settlement of their claims. This abuse of the rights of the insurer raises questions as to the applicability of the tort of bad faith recognized by this court in *Anderson v. Continental Insurance Co.*, 85 Wis. 2d 675, 271 N.W.2d 368 (1978). Although in *Anderson,* we were concerned with allegations of bad faith on the part of the insurer, we recognized that the principle underlying the tort of bad faith was a duty of good faith and fair dealing on the part of *each party* to the contract.

"That such a duty [of good faith] arises out of the relationship between the contracting parties themselves cannot be doubted. As black letter law, Restatement, *Law of Contracts* 2d, sec. 231 (Tentative Drafts Nos. 1–7, Rev. and Edited, 1973), provides: 'Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.' " *Id.* at 688–89.

Thus, it is clear that there is a duty of good faith imposed on the insured as well as the insurer. I believe that this duty of good faith applies to the right of subrogation which the insurer acquired through his good faith

payment of the insured's claim. I would find that this duty has been breached where an insured settles his claim in such a manner as to maximize his recovery, yet prejudice the subrogation rights of the insurer and, therefore, cannot agree with the contrary result fostered, if not approved, by the majority decision.

Because the majority's application of the equitable doctrine of subrogation in this case reaches the wholly unfair result of barring the insurer from exercising its subrogation rights even though the insureds voluntarily settled their claim, I believe the decision is erroneous. I dissent from the majority opinion for the additional reason that the opinion both sanctions and necessitates another trial between the insurer and insured, even though the insured has settled his claim with the actual tortfeasors. Such mini-trials are contrary to the interest of judicial economy and in fact they undermine the very benefit supposedly gained in the settlement of a claim. The error in sanctioning such mini-trials is compounded when it is realized that such trials would be unnecessary were this court to determine that whenever an insured settles his claim with the responsible tortfeasors the subrogated insurer is entitled to recover for its payments to a proportionate amount equated with the insured's percentage recovery of his actual loss.

The error in the majority's sanctioning of "mini-trials" is further highlighted when one realizes that in reality, the majority decision will not result in a greater recovery for a plaintiff-insured. This is because knowledgeable counsel will be aware that medical-pay coverage payments will not be recoverable by the subrogated insurer and, thus, they will view those payments as an offset in determining the settlement value of the case when the plaintiff-insured has received such payments.

Finally, I believe that the majority's decision is in error because it places the insurer in the untenable and

difficult position of having to disprove the claim of its own insured if it seeks to prove by a "mini-trial" that the insured was made whole through its settlement of the case. This result is especially undesirable when one realizes that the insurer often possesses confidential information it gathered from its own investigation of the insured's claim and of the responsible party. The insurer then might be placed in the position of having to use this information in the "mini-trial" or purposely avoid using such information and thus it either prejudices its own case or is forced to cloud the truth in those proceedings. The use at trial of the confidential information gathered by the insurer raises several questions regarding the boundaries of the attorney-client privilege and the ethical considerations raised in the Code of Professional Responsibility. Because the majority opinion pushes the insurer and its attorney to the point where it must resolve these potential ethical dilemmas, I do not agree with the majority opinion.

None of the detrimental results of the majority opinion discussed above would be necessary if they were to adopt the more equitable rule of allowing the subrogated insurer to recover its payments from a settling insured and for this reason, I dissent.

STEINMETZ, J. *(dissenting.)* I disagree with the result and reasoning of the majority and therefore dissent.

The majority's statement of issue is:

"The question presented is whether an automobile insurer, State Farm Mutual Automobile Insurance Company, which, under a subrogation agreement signed by its insured, Palmer H. Rimes, has made payment under the medical-pay provisions of its policy, has the right to recover those payments out of the monies received by its insured in a settlement with negligent third-party tortfeasors and their liability insurers, when, according to

the findings and judgment of the circuit court, the settlement figure was less than the total damages sustained by the insured as the result of an automobile accident." *Supra* at 264.

That is an inappropriate statement of issue, since once the plaintiffs' case was settled in full with the other tortfeasors, there were no longer any "findings and judgment" the court could render regarding the *damages* sustained by the plaintiff. All the court could do was render an advisory opinion which it did, and I find that inappropriate and beyond the trial court's jurisdiction. The trial court did this to obtain a result of the value of plaintiffs' claim in order to determine whether the plaintiffs were made whole when they settled with all tortfeasors in the case. There was no requirement that plaintiffs settle and, as it turns out, if one accepts the majority view, the plaintiffs should have gone to completion of the issues. Of course, there is no way of knowing what a jury verdict would have been with all interested and potentially liable parties participating in the trial. As events occurred here, the plaintiffs accepted in full and complete settlement $125,000 from the potential tort-feasors, and the trial judge opined that the plaintiffs' total case was worth $300,000 with no negligence by the plaintiff driver.

The majority uses two cases for precedential value. I do not believe either case is appropriate.

In *Garrity v. Rural Mut. Ins. Co.*, 77 Wis. 2d 537, 253 N.W.2d 512 (1977), the facts were that the parties *stipulated* that the Garritys had not been made whole for the loss they suffered. *Garrity* does not in any way lend support for a trial court conducting a mini-trial. The *Garrity* trial court ruled pursuant to the authority of sec. 269.01, Stats. (1973).[1]

---

[1] Sec. 269.01, Stats. 1973, provided:

"269.01 **Agreed case; affidavit; judgment.** Parties to a controversy which might be the subject of a civil action, may agree

In *Garrity* the court applied the reasoning in *American Ins. Co. v. Milwaukee*, 51 Wis. 2d 346, 351, 352–53, 187 N.W.2d 142 (1971) :

"Subrogation is recognized or denied upon equitable principles, without differentiation between 'legal subrogation,' arising by application of equity, or 'conventional subrogation,' arising from contracts or acts of the parties."

In *Garrity, supra,* at 546–47, the court also stated :

"We hold that because the contract here contains no language to the contrary, the normal rule of subrogation applies and the subrogee has no right to share in the fund recovered from the tort-feasor until the subrogor is made whole."

It would appear that due to the second holding of *Garrity,* the language of the contract could influence the equitable principles applied. However, the majority in the instant case makes short shrift of this possibility by stating :

"The subrogation agreement in the instant case between Rimes and State Farm is not significantly dissimilar and if literally interpreted would permit recovery by State Farm in the amount of medical payments made on behalf of Rimes." *Supra* at 270.

This statement means that the subrogation agreement in *Garrity* and the present case are not different to any consequential degree. A comparison of the two

upon a verified case containing the facts upon which the controversy depends and submit the same to any court which would have jurisdiction if an action were brought. The court shall, thereupon, render judgment as in an action. Judgment shall be entered and docketed as other judgments and with like effect, but without costs for any proceeding prior to the trial."

This section was subsequently repealed effective January 1, 1976. Supreme Court order, 67 Wis. 2d at 760.

agreements, however, demonstrates they are totally different.

In *Garrity, supra,* at 540, the subrogation clause read:

" *'Subrogation.* This Company may require from the insured an assignment of all *right of recovery* against any party for loss to the extent that payment therefor is made by this Company.' " (Emphasis added.)

In the instant case the subrogation clause reads:

"Upon payment . . . the company shall be subrogated to the extent such payment to the *proceeds of any* settlement or judgment that may result from the exercise of any rights of recovery which the injured person . . . may have against any person . . . and such person shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights." (Emphasis added.)

There is a distinction in the two clauses; in *Garrity* the right of recovery of the insured governs, and in the present case the proceeds of any settlement are pledged for payment. The plaintiffs are presumed to know the language of their contract and should be bound by it, and, at least equitable determinations should not ignore the language of the contract.

The subrogation receipts in the two cases are also substantially different. In *Garrity, supra,* at 544–45, the receipt stated:

" ' "In consideration of and to the extent of said payment, the undersigned hereby subrogates said insurance company to all the rights, claims and interest which the undersigned may have against any person or corporation liable for the loss mentioned above, and authorizes the said insurance company to sue, compromise or settle, in the insured's name or otherwise, all such claims, and to execute and sign releases and acquittances and endorse checks or drafts given in settlement of such claims in the name of the undersigned with the same force and effect as if the undersigned executed or endorsed them." ' "

There the insured gave up all rights, claims and interest in the loss covered against any person and authorized the insurance company to settle.

The subrogation receipt in the instant case differs and reads:

"It is further warranted that no settlement has been made by the undersigned with any person or corporation against whom a claim may lie, and no release has been given to any one responsible for the loss, *and that no such settlement will be made nor release given by the undersigned* without the written consent of the said insurer, and the undersigned covenants and agrees to cooperate fully with said insurer in the prosecution of such claims and to procure and furnish all papers and documents necessary in such proceedings and to attend court and testify if the insurer deems such to be necessary." (Emphasis added.)

In this case, the receipt clearly made the interest of the company paramount in any money paid, pursuant to the coverage, to the insured.

However, all these distinctions in the contracts are ignored when applying equitable principles in the present case.

The stipulation between the parties at settlement released all claims and tort-feasors and resolved all issues except the subrogation issue between the Rimes and their insurance company regarding the subrogated interest in the settlement. There were no real parties in interest left after the settlement except State Farm and the Rimes regarding their agreement. The judge went beyond this and tried the issue of plaintiffs' sustained damages which had already been settled, as well as the apportionment of negligence. The plaintiffs' settlement was based on possible recovery considering contributory negligence and damages when they accepted the $125,-000. The need for the extra hearing after settlement was only to determine the amount State Farm was en-

titled to, recognizing it stood in their insured drivers' shoes as to negligence.

The only adversaries left after the settlement were the insureds and their insurance company on whether a settlement made one whole under all the circumstances or whether a new technique had to be developed to determine wholeness. In accepting the latter course, this court puts its imprimatur on the mini-trial (two days) to the court. There is no reason why State Farm and a company in a similar situation could not demand more than a mini-trial but rather a complete jury trial, since its recovery is affected by not only its insureds' negligence but damages as finally determined by a trier of fact. Therefore, I do not believe the result of this case to be an assistance in moving cases through the courts. The majority's criticism of the insurance company's failure to give up its claimed rights at settlement is neither valid nor appropriate.

The other case the majority relies on is *Lewandowski v. Continental Casualty Co.*, 88 Wis. 2d 271, 276 N.W.2d 284 (1979). I find that relying on that case as authority for the mini-trial in this case is not correct. In *Lewandowski*, the court held the very issue that had to be determined in a legal malpractice case was what loss was caused by the attorney's failure. The court held the issue to be tried was the value and merit of the original claim and stated: "[T]he ultimate goal should be to determine what the outcome *should* have been if the issue had been properly presented in the first instance." *Lewandowski, supra,* at 281.

In *Lewandowski* the primary action for an automobile case had been barred by the attorney's causal negligence and the only way to discover the loss to the client therefore was to try the value of the original action. That is not by any stretch of the imagination a mini or extra proceeding. It is the heart of the matter, the whole is-

sue. Since a loss was claimed as a result of the attorney's admitted negligence and causation was found as a matter of law, the only issue between the parties was the loss which consisted of the liability and damages of the client in the automobile accident case. I, therefore, see no precedential value in the *Lewandowski* case to the mini-trial of this case where the value of the plaintiffs' claim to them was the settlement.

A specter arises from the court's ruling that the insured must be made whole before a subrogor has any right of recovery. The issue becomes when is the insured made whole? Is it when the jury makes an award? I would assume so. The majority implies that never in a settlement is a person made whole since it is recognized purely as a compromise and is not the equivalent of being made whole. Therefore, all settlements in the future must determine within them an admission of wholeness or be subject to additional mini-trials.

I dissent and hold under the circumstances of this case that the settlement made the plaintiffs whole and the mini-trial was an advisory opinion which determined facts without the full participation of all parties.