Michael IVES and Tammy Ives, Plaintiffs-Respondents,

RHINELANDER PAPER COMPANY GROUP HEALTH PLAN FOR HOURLY EMPLOYEES SPONSORED BY RHINELANDER PAPER COMPANY, INC., Plaintiff-Appellant,†

v.

COOPERTOOLS, a division of Cooper Industries, Inc.; Alias Insurance Company No. 1; Cooper Industries, Inc.; Alias Insurance Company No. 2; Berns Enterprises, Inc., d/b/a Rhinelander Hardware; The Aetna Casualty & Surety Company; McGraw-Edison Company; and Alias Insurance Company No. 4, Defendants.

Court of Appeals

*No. 95–0932. Oral argument September 29, 1995.—Decided October 31, 1995.*

(Also reported in 541 N.W.2d 247.)

†Petition to review granted.

937

On behalf of plaintiff-appellant, the cause was submitted on the briefs of and orally argued by *Matthew E. Yde* of *Ruder, Ware & Michler, S.C.* of Wausau.

On behalf of plaintiffs-respondents, the cause was submitted on the brief of and orally argued by *D. J.*

*Weis* of *Habush, Habush, Davis & Rottier, S.C.* of Rhinelander.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J.   Rhinelander Paper Company Group Health Plan for Hourly Employees sponsored by Rhinelander Paper Company, Inc. (Rhinelander), appeals an order denying its recoupment claim for medical expenses paid to Michael Ives as a result of a hunting accident.[1] Rhinelander seeks reimbursement out of the settlement proceeds of a negligence lawsuit between plaintiffs, Michael and Tammy Ives, and several defendants. The parties to this subrogation dispute submitted a stipulation to the court that the plaintiffs received "full value" in their settlement for 17.42% of their total damages discounted for "liability difficulties" and the legal uncertainty of a defendant's successor corporate liability. At a *Rimes* hearing, the circuit court ruled in the Iveses' favor, declaring that they had not been "made whole." *Rimes v. State Farm Mut. Auto. Ins. Co.*, 106 Wis. 2d 263, 316 N.W.2d 348 (1982).[2] We vacate the order and remand for a determination of Michael's contributory negligence, if any.

---

[1] Although the appeal record does not include the Rhinelander insurance contract, an insurer can claim subrogation rights through either a contractual provision or through equity. *Garrity v. Rural Mut. Ins. Co.*, 77 Wis. 2d 537, 543, 253 N.W.2d 512, 515 (1977).

[2] *Rimes v. State Farm Mut. Auto. Ins. Co.*, 106 Wis. 2d 263, 316 N.W.2d 348 (1982). In a *Rimes* hearing, the circuit court holds a post-settlement trial to determine whether the settlement made the insured whole.

At the *Rimes* hearing the circuit court noted that plaintiffs obtained a settlement despite unresolved issues of defendants' negligence in fact, legal problems of successor corporate liability and the possibility that the injuries were the result of a "pure accident," that is, the absence of negligence by anyone. We believe that under Wisconsin's *Rimes-Garrity* rules, an insurer may seek reimbursement out of settlement proceeds only where that sum compensates the insured for all damages less the percentage of the insured's contributory negligence, if any. *Garrity v. Rural Mut. Ins. Co.*, 77 Wis. 2d 537, 253 N.W.2d 512 (1977). Other factors that reduce a settlement to less than full payment of all damages, including the possibility of no negligence by the defendant, or the possibility of rulings on matters of fact or law adverse to the plaintiffs' claim are irrelevant. We therefore conclude that a settlement discounted for factors other than plaintiffs' contributory negligence does not make the insured whole. However, we must remand in light of the absence of a finding of Michael's contributory negligence, if any. Further, because the issue may arise on remand, we also conclude that the § 895.045, STATS., bar to recovery in negligence actions has no application to the equitable resolution of a subrogation dispute.[3]

---

[3] Section 895.045, STATS., provides:

Contributory negligence. Contributory negligence shall not bar recovery in an action by any person or the person's legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not greater than the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of negligence attributable to the person recovering.

Michael Ives sustained severe injuries when he fell out of a tree as a result of the collapse of his deer stand. Rhinelander paid $132,292 in medical expenses and sickness benefits Michael incurred because of the accident. Michael and Tammy Ives sued the manufacturer and seller of a double-end snap cap Michael used to hold his deer stand in place, and the insurers of the manufacturer and seller. The Iveses contended that the double-end snap cap failed, causing the deer stand to collapse and Michael to fall to the ground. Rhinelander was added as a plaintiff pursuant to its payment of medical expenses for treatment of Michael's injuries.

Approximately one week before trial, the Iveses entered into a settlement with the defendants in which the defendants paid $261,250 to fully settle the claim. The Iveses requested a *Rimes* hearing to determine their potential liability to Rhinelander out of the settlement proceeds. For purposes of the *Rimes* hearing, the Iveses and Rhinelander submitted to the court a written stipulation to the following facts:

1. Plaintiffs' total damages as a result of injuries to Plaintiff MICHAEL IVES following his fall from a deer stand on or about November 10, 1989, are 1.5 million dollars.

2. That the defendants' payment of $261,250.00 in full settlement of all personal injury and property damage claims arising out of Plaintiff MICHAEL IVES' fall from a deer stand on or about November 10, 1989, is full-value for the Plaintiffs' claims based on the following factors:

a. Liability difficulties; and

b. Uncertainty of successor corporate liability on the Coopertools defendants.

3. That due to liability problems and the uncertainty of successor corporate liability, the

Plaintiffs accepted 17.42 percent of their total damages arising out of the November 10, 1989, accident.

4. That Plaintiffs' decision to accept 17.42 percent of their total damages was <u>not</u> based on insufficient insurance coverage or the unavailability of funds on the part of the defendants to satisfy a 1.5 million dollar judgment.

5. That Rhinelander has paid medical expenses ($128,487.40) and accident and sickness benefits ($3,804.60) relating to this accident in the amount of $132,292.00.

On the basis of the stipulation, the circuit court decided that Rhinelander was not entitled to subrogation. The court reasoned that the discounted settlement did not pay the Iveses for their entire actual loss, and that the equities of the case favored the Iveses because Rhinelander itself failed to initiate suit against the manufacturers.

■ The application of the "made whole" doctrine of *Rimes* to stipulated facts is a question of law that we review de novo. *See Oakley v. Fireman's Fund,* 162 Wis. 2d 821, 826, 470 N.W.2d 882, 884 (1991). Rhinelander is not entitled to subrogation unless the Iveses have been made whole for their loss. *See Rimes,* 106 Wis. 2d at 271-72, 316 N.W.2d at 353. The stipulation and statements at the *Rimes* hearing indicate three types of liability issues for which the settling parties discounted the settlement: contributory negligence, uncertain successor corporate liability and the possibility the fall was a pure accident. Of these three issues, Wisconsin courts have only addressed whether a settlement discounted for contributory negligence makes a party whole. *See Sorge v. National Car Rental System,* 182 Wis. 2d 52, 512 N.W.2d 505 (1994). In *Sorge,* our

supreme court held that an insured was made whole by a settlement that compensated the insured for all losses except those attributable to the insured's negligence. *Id*. at 62, 512 N.W.2d at 509.

Whether an insured is made whole by receiving a settlement discounted for liability problems other than contributory negligence is an issue of first impression. Subrogation arises under the principles of equity, and its purpose is to prevent double recovery by the insured. *Rimes*, 106 Wis. 2d at 272, 316 N.W.2d at 353.

We decline to extend the requirements of a *Rimes* hearing to include considerations such as the difficulty of proof of liability, including questions of law that may adversely affect a particular claim. These factors are among a profusion of considerations that impact the ultimate settlement of any lawsuit. They are "neutral factors" in the sense that they are unrelated to plaintiffs' fault, and are unnecessary to a resolution of a fair distribution of settlement proceeds between the insureds and the insurer.

■

Although we exclude factors other than the insured's own negligence from the *Rimes* determination, we must remand in light of the absence of a determination of Michael Ives' contributory negligence, if any. Plaintiffs maintain that *Sorge* only includes the plaintiff's contributory negligence in the made-whole determination where the plaintiff has stipulated to a precise percentage of fault. We do not read *Sorge* so narrowly. *Sorge* holds in no uncertain terms that a settlement agreement that compensates an injured party for all of her losses less the amount corresponding to her contributory negligence is made whole. *Id*. at 62, 512 N.W.2d at 509.

Because the stipulation in this case did not determine Michael's contributory negligence, if any, we remand for that determination. We conclude that the statutory ban on negligence claims where the plaintiff is more than 50% at fault, § 895.045, STATS., has no application to the resolution of the subrogation issue in this case.

In matters of equity, including subrogation claims, our duty is to do complete justice between the parties to the action. *State v. Excel Mgmt. Servs.*, 111 Wis. 2d 479, 491, 331 N.W.2d 312, 318 (1983). We need not limit our analysis, however, to considerations as abstract as a general appeal to equity or justice. The Wisconsin Supreme Court has declined to apply the bar for contributory negligence in other analogous equity cases. *Bielski v. Schulze*, 16 Wis. 2d 1, 114 N.W.2d 105 (1962), a landmark better remembered because it abolished the doctrine of gross negligence in Wisconsin, also changed the law of contribution between joint tortfeasors so as to apportion the amount of contribution in relation to their relative negligence. *Id.* at 6-14, 114 N.W.2d at 107-111. Noting that contribution is an equitable doctrine based upon natural justice, *Bielski* held that § 331.045, STATS. (renumbered § 895.045, STATS.), had no application to the doctrine of contribution; it then concluded that the right of one tortfeasor to contribution is not barred because his negligence may be equal to or greater than the negligence of his co-tortfeasor. *Id.* at 6, 114 N.W.2d at 107-08.[4] It is undis-

---

[4] Writing in *Lawver v. Park Falls*, 35 Wis. 2d 308, 316, 151 N.W.2d 68, 72 (1967) (Hallows, J., concurring), the late Justice Harold Hallows invited the legislature to change the contributory negligence statute: "In justice, there is no reason why a plaintiff who is 52 percent negligent should not recover 48 per-

puted that like contribution, subrogation is an equitable doctrine based upon natural justice and equity.

To reach an equitable result in subrogation cases, we conclude that an insured who is greater than 50% contributorily negligent is made whole if the insured receives his or her total damages discounted by the percentage of contributory negligence, *even if that percentage is greater than 50%*. In other words, if the insured is 70% contributorily negligent, a settlement of 30% or more of total damages makes the insured whole. The settlement in this case would make the Iveses whole if Michael was 82.58% or greater contributorily negligent.[5]

The Iveses assert that remand on the issue of contributory negligence is unnecessary because the circuit court found that Michael's contributory negligence did not exceed 50%. The Iveses contend that the following statement by the circuit court constituted the finding: "So, for the reasons stated, I'm going to find that Mr. Ives has not been made whole. I cannot assume that his contributory negligence would have exceeded that of the manufacturer or the seller, and I don't assume that."

We first note that the parties' stipulation fails to establish the percentage of Michael's negligence. This statement is the only reference to contributory negligence in the court's reasoning for its decision. The statement was no doubt a recognition that the stipula-

cent of the amount of his damages. There is nothing magic about being equally at fault so that one should lose all and the other win all."

[5] The Iveses received 17.42% of their damages in the settlement. (100% - 17.42% = 82.58%).

tion was not precise with respect to contributory negligence, not a finding on that issue.

■

We remand the case to determine Michael's percentage of contributory negligence. The settlement would make the Iveses whole if Michael was 82.58% or greater contributorily negligent. Rhinelander has a right of priority in any money collected over the amount of the Iveses' total damages discounted for the percentage of Michael's contributory negligence up to the amount of benefits paid.

*By the Court.*—Vacated and cause remanded for further proceedings.