Timothy TRAYNOR, and Luann Traynor, Plaintiffs-Respondents,

v.

THOMAS & BETTS CORPORATION, Defendant-Appellant.

Court of Appeals

*No. 02–1553. Submitted on briefs December 3, 2002.—Decided January 22, 2003.*

2003 WI App 38

(Also reported in 659 N.W.2d 158.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Donald Chance Mark, Jr.* and *Erik F. Hansen* of *Fafinski Mark & Johnson, P.A.*, Eden Prairie, Minnesota.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Ardell W. Skow* and *Martha H. Heidt*, Baldwin.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. PETERSON, J. Thomas & Betts Corporation appeals a judgment dismissing its counterclaims and granting reasonable expenses and attorney fees to Timothy and Luann Traynor in the sum of $56,347.28. Thomas & Betts argues that the circuit court erred by finding that it did not have priority rights to a third party settlement. It also argues that the expenses awarded against it were excessive and improper. We disagree and affirm.

## BACKGROUND

¶ 2. Timothy Traynor was injured in an automobile accident in May 1995. As a result of the accident, Traynor's left leg was amputated below the knee.

348

Traynor was insured by Triple Gold Health Care Plan, an ERISA plan, through his employer, Thomas & Betts. The Plan paid approximately $80,000 in medical payments for Traynor.

I. The Triple Gold Plan

¶ 3. The Triple Gold Plan provided for subrogation rights. Additionally, the Plan states that the claims administrator has the authority to construe the Plan's provisions. Without any citation to the record, Thomas & Betts asserts that Atrium Health Plan, Inc., was the administrator. It then states that Dave Anderson, a claims representative for Atrium, originally interpreted the subrogation clause to give Thomas & Betts priority rights. According to Thomas & Betts, Thomas Gilde, the attorney for Atrium, also similarly interpreted the subrogation clause. Atrium was not the claim administrator when Gilde gave his interpretation.

¶ 4. Thomas & Betts claims it amended the Plan's subrogation provision in 1995 to explicitly provide priority rights. The Plan provides a process for amendment:

> All changes to the Plan must be approved by an executive officer of Thomas & Betts Corporation/Meyer Industries . . . . No agent can legally change the Plan or waive any of its terms. . . .

In this case, the amendment was approved by a benefits committee appointed by Thomas & Betts to oversee the administration of the plan. Judith Hines, the human resources manager, was a member of this committee, as were the plant manager and the controller.

## II. Pre-Trial Pleadings and Discovery

¶ 5. In March 1996, Traynor and his wife filed an action based on the auto accident. They named Thomas & Betts as a defendant because of its potential subrogation interest. Thomas & Betts counterclaimed for subrogation and reimbursement, alleging payment of benefits pursuant to the Plan.

¶ 6. There are several items of discovery which played a role in the disposition of this case. In a request for admissions, the Traynors asked Thomas & Betts to admit that Judy Hines was not an executive officer of Thomas & Betts. Thomas & Betts admitted this.

¶ 7. Later, in interrogatories, the Traynors asked Thomas & Betts to "[i]dentify the executive officer . . . who approved the amendment . . . ." Thomas & Betts answered that "Judy Hines approved the amendment . . . ."

¶ 8. In another set of interrogatories, the Traynors asked Thomas & Betts to "[p]rovide all Plan or amendment or Plan Document interpretations by a Claims Administrator that you will rely on in support of the claim." Thomas & Betts responded: "The opinion of Mr. Tom Gilde has already been provided in discovery." The Traynors also asked Thomas & Betts to "identify . . . any human being who so constructed/interpreted the Plan . . . ." Thomas & Betts answered: "Thomas Gilde."

## III. Circuit Court Procedural Background

¶ 9. The Traynors filed a motion for dismissal and summary judgment against Thomas & Betts, seeking reasonable attorney fees and costs. Thomas & Betts opposed the motion. First, it argued that Gilde had

interpreted the original Plan to provide priority subrogation rights. Alternatively, it contended that the Plan was validly amended to provide priority subrogation rights. Because the Plan was governed by ERISA, Thomas & Betts maintained that federal law held that the make whole doctrine, which would require that the Traynors be fully compensated for their injuries before the Plan's subrogation rights could be enforced, did not apply.

¶ 10. The court granted partial summary judgment. It concluded that the Plan was not validly interpreted because Gilde was not the claim administrator when he rendered his opinion. Further, the court concluded the 1995 amendment was not valid because it was not approved by an executive officer as required by the Plan. As a result, the court held that the make whole doctrine did apply in this case. However, the Traynors' claims had not yet been settled, so there was no way for the court to determine whether they would be made whole. Therefore, the court held in abeyance the Traynors' motion for dismissal and request for attorney fees and costs.

¶ 11. The Traynors then settled their accident claim. Thomas & Betts joined a stipulation stating:

[T]he above entitled action has been fully compromised and settled between plaintiffs Timothy Traynor & LuAnn Traynor and defendants Richard O'Neil & General Casualty Company of Wisconsin; that such settlement did not make plaintiffs whole; and that pursuant to *Rimes v. State Farm Mut. Auto. Ins. Co.,* 106 Wis.2d 263, 316 N.W.2d 348 (1982), defendant Thomas & Betts Corporation is barred from sharing in the settlement fund.

¶ 12. After this stipulation, the Traynors moved to dismiss Thomas & Betts and renewed their request

for attorney fees and costs. Thomas & Betts did not oppose the motion to dismiss. In fact, in granting the motion, the court stated on the record that the motion was not disputed.

¶ 13. The court also granted the Traynors' request for attorney fees and costs. The court concluded Thomas & Betts' answers to the Traynors' requests for admission and interrogatories were made in bad faith. The Plan provided that amendments could only be approved by an executive officer. In answer to a request for admission, Thomas & Betts admitted that Judith Hines was not an executive officer. However, later in an interrogatory, Thomas & Betts stated that Hines was the person who approved the 1995 amendment. The court concluded it was bad faith to later argue that Hines validly approved the amendment when Thomas & Betts knew she was not an executive officer and, in fact, had already admitted she was not an executive officer. The court ultimately awarded the Traynors $56,347.28 for reasonable attorney fees and costs.

## DISCUSSION

### I. Subrogation Rights

¶ 14. Thomas & Betts renews the same arguments it made in circuit court: (1) the original Plan was properly interpreted to give it subrogation rights; (2) alternatively, the amendment was validly adopted to give it subrogation rights; and (3) its subrogation rights are not subject to the make whole doctrine.

¶ 15. With amazing temerity, Thomas & Betts presents a thirty-page brief to this court, never once mentioning that, after the court's ruling on the applicability of the make whole doctrine, Thomas & Betts

stipulated to drop its subrogation claim. Its attorney signed a stipulation that could not be clearer: "Thomas & Betts is barred from sharing in the settlement fund." Based on the stipulation, the Traynors moved for dismissal. Thomas & Betts did not oppose the motion, nor did Thomas & Betts demur when the court commented that the motion was undisputed.

¶ 16. Now in its reply brief, Thomas & Betts contends that the Traynors are mischaracterizing the "spirit and intent" of the stipulation. It asserts the stipulation was only designed to spare the Traynors a *Rimes* hearing. It claims it did not stipulate to the applicability of *Rimes* but merely acknowledged the holding of *Rimes*. To the contrary, the stipulation is unambiguous. It was not a simple acknowledgement of case law. It specifically agreed that *Rimes* applies to the Traynors' claims. It stated "that pursuant to *Rimes v. State Farm Mut. Auto. Ins. Co.*, 106 Wis. 2d 263, 316 N.W.2d 348 (1982), defendant Thomas & Betts is barred from sharing in the settlement fund." Subsequently, Thomas & Betts acquiesced in the dismissal of its counterclaims.

■

¶ 17. The circuit court dismissed the case based on the stipulation. Construction of a stipulation is a question of law that we review independently. *Duhame v. Duhame*, 154 Wis. 2d 258, 262, 453 N.W.2d 149 (Ct. App. 1989).

¶ 18. Based on the clear language of the stipulation, Thomas & Betts agreed that it was barred from sharing in the Traynors' settlement. As a result, it is, in turn, barred from renewing its summary judgment arguments on appeal.

## II. Attorney Fees and Costs

█

¶ 19. The trial court awarded attorney fees and costs against Thomas & Betts pursuant to Wis. Stat. § 804.12(3) and 29 U.S.C. § 1132(g)(1). The trial court found that Thomas & Betts acted in bad faith by arguing the 1995 amendment was validly adopted, when it had already admitted that Hines was not an executive officer. Whether to uphold an award of attorney fees and costs is a question of law that we review independently. *See Brandt v. LIRC*, 166 Wis. 2d 623, 630, 480 N.W.2d 494 (1992).

¶ 20. Wisconsin Stat. § 804.12(3) provides:

> If a party fails to admit the genuineness of any document or the truth of any matter as requested under s. 804.11, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, the requesting party may apply to the court for an order requiring the other party to pay the requesting party the reasonable expenses incurred in the making of that proof, including reasonable attorney fees. The court shall make the order unless it finds that (a) the request was held objectionable pursuant to sub. (1), or (b) the admission sought was of no substantial importance, or (c) the party failing to admit had reasonable ground to believe that he or she might prevail on the matter, or (d) there was other good reason for the failure to admit.

¶ 21. Under 29 U.S.C. § 1132(g)(1), "court in its discretion may allow a reasonable attorney's fee and costs of action to either party." In determining whether to award fees under 29 U.S.C. § 1132(g)(1), a court should determine whether the party's position was substantially justified. *Harris Trust & Savings Bank v.*

*Provident Life & Accident Ins. Co.*, 57 F.3d 608, 616 (7th Cir. 1995). Substantially justified means less than meritorious but more than merely non-frivolous. *Bittner v. Sadoff & Rudoy Indus.*, 728 F.2d 820, 830 (7th Cir. 1984). Attorney fees will not be awarded if the court finds that the party's position has a reasonable basis in law and fact or special circumstances exist which would make an award of fees unjust. *Harris*, 57 F.3d at 617.

.¶ 22. Thomas & Betts claims it did not act in bad faith. Instead, Thomas & Betts argues that the 1995 amendment was validly adopted by the benefits committee, of which Hines was a part. It also argues that the claim administrator interpreted the original Plan to give the company priority rights. Thomas & Betts maintains that it was justified in relying on what it thought was a valid amendment and on a valid interpretation of the original language.

¶ 23. However, there is no basis for contending the 1995 amendment was validly adopted. In response to the Traynors' request for admissions, Thomas & Betts admitted that Hines was not an executive officer. A response that admits a matter conclusively puts it to rest. WIS. STAT. § 804.11(2). Thomas & Betts never asked for relief from the admission. Then, in its answers to the Traynors' interrogatories, Thomas & Betts responded that "Judy Hines approved the amendment." The Plan specifically requires that all changes be approved by an executive officer. Thomas & Betts admitted that Hines was not an executive officer, but listed her as the one who approved the amendment. It is clear that the amendment was not valid since it was not approved by an executive officer. Thomas & Betts' argument is contrary to a conclusively established fact.

¶ 24. Nor could Thomas & Betts in good faith believe the original Plan language was validly inter-

preted. Thomas & Betts maintains that Gilde's interpretation was simply a reiteration of Anderson's earlier interpretation. Thomas & Betts contends that the circuit court ignored Anderson's interpretation. However, in its answers to interrogatories, Thomas & Betts answered that Gilde was the one who interpreted the plan. No mention was ever made of Anderson–in discovery or in the circuit court.[1] Since Gilde was not a claims administrator, Thomas & Betts was not justified in relying on his interpretation of the plan.

¶ 25. Finally, Thomas & Betts argues that the fee request submitted by the Traynors was too vague to sustain the award. Thomas & Betts argues the Traynors' attorneys' records lacked sufficient detail to evaluate the reasonableness of the time expenditure. Thomas & Betts questions whether the attorneys actually spent the 400 hours claimed in their affidavit.

¶ 26. We will uphold a trial court's determination regarding the amount of attorney fees awarded as long as the court demonstrated "a logical rationale based on the appropriate legal principles and facts of record." *Hughes v. Chrysler Motors Corp.*, 197 Wis. 2d 973, 987, 542 N.W.2d 148 (1996) (citation omitted). The court listed a number of reasons for its decision. First, the court noted that the Traynors' attorneys were working on a contingency basis, so their records would not be the same as if they were working on an hourly basis. Second, the court stated that the moving party, as the Traynors were here, would spend more time than the responsive party in filing motions and conducting dis-

---

[1] Thomas & Betts' allusion to Anderson as the claim administrator who first interpreted the Plan was first raised on appeal. We need not review issues first raised on appeal.

covery. Finally, the court noted that this was a very complicated case requiring a great deal of time and attention. We conclude that the court's award demonstrated a logical rationale and uphold its determination.

III. The Traynors' Motion for Fees and Costs

¶ 27. The Traynors now move for fees and costs because they contend Thomas & Betts' appeal is frivolous. "We decide as a matter of law whether an appeal is frivolous." *J.J. Andrews, Inc. v. Midland*, 164 Wis. 2d 215, 225, 474 N.W.2d 756 (Ct. App. 1991). In order to impose sanctions against a party for a frivolous claim, we must conclude one of the following:

> (a) The action, special proceeding, counterclaim, defense or cross complaint was commenced, used or continued in bad faith, solely for purposes of harassing or maliciously injuring another.
>
> (b) The party or the party's attorney knew, or should have known, that the action, special proceeding, counterclaim, defense or cross complaint was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law.

WIS. STAT. § 814.025(3).

¶ 28. There are a number of examples that convince us this appeal was not supported by a good faith argument. Primarily, we are concerned with Thomas & Betts' failure to discuss or even mention in its initial brief the stipulation and applicable admissions and responses to interrogatories. Thomas & Betts attempts

to argue a position that is contrary to facts conclusively established through the requests for admission and interrogatories.

¶ 29. Second, it is bad faith for Thomas & Betts to now reassert its summary judgment arguments, when it did not object to dismissal of the case after entering the stipulation. Therefore, under WIS. STAT. § 814.025(3)(b), we determine that this appeal was frivolous because it was made in bad faith, and remand to the circuit court to detmine the amount of fees and costs that should be awarded.

*By the Court.*—Judgment affirmed and cause remanded.