NEWPORT NEWS SHIPBUILDING COMPANY, Plaintiff-Respondent,

Paul MANDELIN, by James R. Sakar, Guardian ad Litem, Milton Mandelin, Toini Mandelin and Aetna Life Insurance Company, Plaintiffs,

v.

T.H.E. INSURANCE COMPANY, Defendant-Appellant,

SPIELBAUER FIREWORKS COMPANY, INC., City of Greenfield, a municipal corporation, and County of Milwaukee, a municipal corporation, Defendants.

Court of Appeals

*No. 93–2944. Submitted on briefs August 2, 1994.—Decided September 7, 1994.*

(Also reported in 523 N.W.2d 270.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Timothy S. Knurr* of *Schoone, Fortune, Leuck, Kelley & Pitts, S.C.*, of Racine, Wisconsin.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *James O. Huber, Brian W. McGrath*, and *Michael J. Aprahamian* of *Foley & Lardner* of Milwaukee.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

FINE, J. T.H.E. Insurance Company appeals the trial court's grant of summary judgment to Newport News Shipbuilding Company, upholding Newport News' subrogation claim for reimbursement of monies it paid to an employee under its medical-benefits plan. We affirm.

## I.

This dispute arises out of a fireworks accident that injured Paul Mandelin, a minor. Paul Mandelin and his parents sued, among others, the fireworks manufacturer and its liability carrier, T.H.E. Insurance. Newport News, which employed Paul Mandelin's father, paid medical benefits to the Mandelins under Newport News' self-funded benefits plan governed by the Employee Retirement Income and Security Act, 29 U.S.C. §§ 1001 *et seq.*, otherwise known as ERISA.[1] Ultimately, the Mandelins and T.H.E. Insurance settled the Mandelins' claims. Newport News seeks reimbursement of its medical-benefits payments to the Mandelins. As part of the settlement agreement, the defendants agreed that they would "be responsible for compensating any subrogated carriers for their claims in this matter."

Under Wisconsin law, an insurance company that pays medical benefits to an insured for injuries resulting from another's negligence may not recover those payments unless the insured has been made whole. *See Schulte v. Frazin*, 176 Wis. 2d 622, 628-629, 500 N.W.2d 305, 307 (1993) (reaffirming the vitality of *Garrity v. Rural Mut. Ins. Co.*, 77 Wis. 2d 537, 253 N.W.2d 512 (1977), and *Rimes v. State Farm Mut. Auto. Ins. Co.*, 106 Wis. 2d 263, 316 N.W.2d 348 (1982)). It is

---

[1] A self-funded plan, sometimes also termed "unfunded," means that "every penny paid out in plan benefits comes out of the company's coffers," rather than funds committed by some insuring entity. *See Cutting v. Jerome Foods, Inc.*, 993 F.2d 1293, 1295 (7th Cir. 1993), *cert. denied*, 114 S. Ct. 308 (1993). Newport News' plan specifically provides: "The Company shall pay such amounts as shall be necessary to provide Plan benefits. Funds to provide Plan benefits are paid from the general assets of the Company."

apparently undisputed that Paul Mandelin has not been made whole by the settlement. Nevertheless, the trial court granted summary judgment to Newport News on its subrogation claim, noting in its August 30, 1993, oral decision that "T.H.E. does not challenge the assertion that the benefit plan is governed by ERISA and is, therefore, not subject to the Wisconsin 'made whole' subrogation rule." Indeed, in its brief before the trial court, T.H.E. Insurance asserted that it "recognizes that the plan is an ERISA plan and is not subject to the ["made whole"] rule," and that it was "not arguing that payment should not be made to the subrogated carrier because of the Rimes 'made whole rule.'" Rather, T.H.E. Insurance opposed summary judgment by arguing that Newport News had to prove that the defendants were liable for Paul Mandelin's injuries and that this required a trial:

> It is the position of T.H.E. that, if the subrogated carrier [Newport News] wants recovery, then the subrogated carrier is going to have to try this case, bring in the experts, and establish liability on the part of the defendants under the laws of the State of Wisconsin governing negligence, strict liability, comparative negligence, and contributory negligence.

The trial court disagreed, ruling that under the Newport News benefit plan, Newport News "had a contractual right to recover monies it paid for Paul Mandelin's medical expenses if he received a payment in settlement of his claims against a third person," and that a trial on the defendants' liability was not required.

Shortly after the trial court's August 30, 1993, oral decision granting summary judgment to Newport

369

News, T.H.E. Insurance sought reconsideration, arguing for the first time that ERISA did not pre-empt Wisconsin's "made whole" doctrine. In its submission to the trial court, T.H.E. Insurance cited a March 23, 1993, decision by the United States district court for the Western District of Wisconsin, *Sanders v. Scheideler*, 816 F. Supp. 1338, which adopted, under the circumstances there presented, a "federal common law" " 'make whole' doctrine as a default priority rule." 816 F. Supp. at 1340.[2] After a brief hearing on September 20, 1993, the trial court ruled that *Sanders* did not apply, and denied the motion. Judgment was subsequently entered. Although our review is *de novo, see Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987), we affirm.

## II.

The pertinent part of the Newport News benefit plan provides:

10.6 <u>Subrogation</u>. By accepting Coverage under this Plan, each Covered Person agreed [*sic*] that if he or she receives any benefits under this Plan or any other Company benefit arising out of any injury, illness or condition for which he may assert a claim to recovery against another person, then:

(a) The Company shall be subrogated to the Covered Person's rights or recovery and is entitled to reimbursement from the responsible person to the extent of benefits payable under this Plan or any other Company benefit; and,

---

[2]*Sanders* was affirmed by the Seventh Circuit on June 1, 1994, in a non-published order. 25 F.3d 1053 (table); 1994 WL 234497.

> (b) The Covered Person will reimburse the Plan Administrator to the extent of, but not exceeding, any payment received in settlement or satisfaction of a judgment on any such claim;

As noted, the settlement agreement between the Mandelins and the defendants in the underlying lawsuit states that the defendants "shall be responsible for compensating any subrogated carriers for their claims in this matter." T.H.E. Insurance argues that the Mandelins must be first made whole before Newport News may enforce 10.6(b) of the benefit plan. They also argue that, notwithstanding the settlement between the Mandelins and the defendants in the underlying action, Newport News must first establish that the defendants are indeed liable for Paul Mandelin's injuries.

A. *The "make whole" doctrine.*

■

Subrogation provisions of self-funded ERISA plans trump state subrogation rules. *FMC Corp. v. Holliday*, 498 U.S. 52, 58-65 (1990). Thus, application of any "make whole" rule must be found, if found at all, in the federal common law applicable to ERISA. *Cutting v. Jerome Foods, Inc.*, 993 F.2d 1293, 1296-1297 (7th Cir. 1993), *cert. denied*, 114 S. Ct. 308 (1993). Insofar as the federal common law is concerned, the right of a plan beneficiary to be made whole before the plan can recoup its payments "exists only when the parties are silent." *Id.*, 993 F.2d at 1297. The plan here is not "silent." Rather, Newport News' ERISA plan vests discretion to interpret the plan in a "Benefits Committee of not less than three persons" appointed by the company's board of directors. Under 11.5(d) of the plan, the

371

benefits committee's "good faith" interpretation of the plan is "final and conclusive." According to an uncontested affidavit submitted to the trial court by Newport News, "the Benefits Committee, in administering the Plan, has consistently enforced the subrogation right of Newport News regardless of whether the covered person was made whole by his or her recovery from another person."

Courts give substantial deference to the interpretation of an ERISA plan by the plan's administrator when the plan vests in the administrator discretion to interpret the plan. *Cutting*, 993 F.2d at 1296. That interpretation is binding on us here unless we are persuaded that it is "unreasonable." *Id.*, 993 F.2d at 1296. As *Cutting* points out, although the law in Wisconsin, the "make whole" rule is hardly "universal," and may not even be "predominant." *Id.*, 993 F.2d at 1297. Given the competing policy interests applicable to fashioning a federal common-law "make whole" rule for ERISA, *see id.*, 993 F.2d at 1297-1298, we, as did *Cutting*, cannot conclude "that the company was *unreasonable* in interpreting this plan as disclaiming the make-whole principle," *see id.*, 993 F.2d at 1299.[3] (Emphasis in original.)

---

[3] In arguing for a contrary rule, T.H.E. Insurance relies here, as it did before the trial court, on *Sanders v. Scheideler*, 816 F. Supp. 1338 (W.D. Wis. 1993), which was decided on March 23, 1993. *Cutting* was decided on May 20, 1993, and, obviously, it, not *Sanders*, states the ERISA law for the Seventh Circuit. *See Hutto v. Davis*, 454 U.S. 370, 375 (1982) (lower federal courts must defer to law as established by higher federal courts) (*per curiam*). Accordingly, we need not decide to what extent if any *Sanders* conflicts with *Cutting*. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed). In any event, we see no

B. *The defendants' liability as a predicate to subrogation.*

T.H.E. Insurance argues that Newport News, as successor to the Mandelins' rights *vis a vis* the defendants, must establish the defendants' negligence and the extent of that negligence as a predicate to Newport News' recoupment of the monies paid to the Mandelins under the plan. It bases this argument on two grounds. First, it contends that "[a]ll the plan language does is provide Newport with a right to subrogation, and that as a subrogee it has no greater rights than the Mandelins did prior to the settlement." Second, in a related contention, T.H.E. Insurance points out that Newport News' "counterclaim and cross claim," filed together with its answer to the complaint, did not seek reimbursement from the Mandelins. Rather, Newport News asserted that it "had a subrogated interest in this case by virtue of payments made on behalf of Paul Mandelin," and that it was "subrogated to [the Mandelins'] rights herein to the extent of such payments." (Uppercasing omitted.) We do not read either the plan or Newport News' pleadings that narrowly.

1. *The benefit plan.*

As we have seen, under the Newport News benefit plan Newport News is "subrogated to the Covered Per-

---

conflict. The Seventh Circuit affirmed the trial court in *Sanders* because the trial court "correctly held that the plan's terms were inadequate to grant the trustees discretionary power to construe the plan's subrogation provision." 1994 WL 234497 at **2 n.2. As seen, the ERISA plan here specifically grants that power to the plan's administrator, the benefits committee. Thus, *Sanders* is not applicable to this case.

son's rights or recovery and is entitled to reimbursement from the responsible person to the extent of benefits payable under this Plan." Were this the plan's only reference to Newport News' recoupment rights, T.H.E. Insurance's argument might have some force. We need not decide this issue, however, because the plan specifically provides that the recipient of plan benefits must "reimburse the Plan Administrator to the extent of, but not exceeding, any payment received in settlement or satisfaction of a judgment on any such claim."

As noted earlier, the defendants agreed that their settlement with the Mandelins was "in addition to any claims by the subrogated parties." The defendants further agreed to "be responsible for compensating any subrogated carriers for their claims in this matter." In its written findings and order approving the settlement, the trial court found that the fireworks manufacturer and T.H.E. Insurance "specifically agree[d] to indemnify the Mandelins in regard to any and all claims by any subrogated carriers" for payments made to the Mandelins before a specified cutoff date.[4] T.H.E. Insurance thus stands in the Mandelin's shoes *vis a vis* Newport News, and Newport News' contractual right to reimbursement from the Mandelins is now a right of reimbursement from T.H.E. Insurance. Neither the plan document nor any applicable law of which we are aware requires a trial on the merits of the Mandelins' claims against the defendants.

2. *The pleadings.*

---

[4] There is nothing in the record to show that T.H.E. Insurance objected to the trial court's characterization of the defendants' undertaking as one of indemnification.

T.H.E. Insurance argues that Newport News' pleading sought merely to be subrogated to the Mandelins' rights against the defendants rather than reimbursement from the Mandelins pursuant to the terms of the plan. This contention is technically correct—Newport News' pleading did not specifically refer to "reimbursement," and did not specifically assert a claim against the Mandelins (or against any of the defendants, for that matter). The pleading was filed before the parties settled, however, and did allege that Newport News "had a subrogated interest in this case by virtue of payments made on behalf of Paul Mandelin." Inasmuch as under 10.6(b) of the plan, Newport News' right to reimbursement could not arise until after the Mandelins received payment in settlement of their claims against the defendants, this pre-settlement pleading was legally sufficient to preserve its claim for reimbursement; the pleading gave the parties notice of Newport News' claim and also the " 'grounds upon which it rests.' " *See Hlavinka v. Blunt, Ellis & Loewi, Inc.*, 174 Wis. 2d 381, 403, 497 N.W.2d 756, 765 (Ct. App. 1993) (citation omitted) ("Notice pleading" permits resolution of legal disputes "on the merits of the case rather than on the technical niceties of pleading.").

*By the Court.*—Judgment affirmed.