Bradley SCHULTZ, by his guardian ad litem, Susan C. Schill, Plaintiff-Appellant,

v.

NEPCO EMPLOYEES MUTUAL BENEFIT ASSOCIATION, INC., Intervening Plaintiff-Respondent,

STATE FARM INSURANCE COMPANIES, Defendant,

Randy SCHULTZ, and John W. Schultz, Impleaded Defendants.

Court of Appeals

*No. 93–2099. Submitted on briefs November 14, 1994.—Decided December 15, 1994.*

(Also reported in 528 N.W.2d 441.)

For the plaintiff-appellant the cause was submitted on the briefs of *H. James Tuchscherer* and *R. John Symonds* of *Nash, Podvin, Tuchscherer, Huttenburg, Weymouth & Kryshak, S.C.* of Wisconsin Rapids.

For the intervening plaintiff-respondent the cause was submitted on the brief of *Lee J. Geronime, John C. Lapinski* and *Paul D. Windsor* of *Michael, Best & Friedrich* of Milwaukee.

Before Eich, C.J., Gartzke, P.J., and Dykman, J.

EICH, C.J.   The plaintiff in this personal injury case, Bradley Schultz, appeals from a summary judgment distributing the proceeds of an insurance settlement of his claim.

Schultz, a minor, was injured in an accident caused by an insured of the State Farm Insurance Companies. State Farm conceded liability and tendered its policy limits of $100,000 to Schultz, who

sought court approval of the settlement. Nepco Employees Mutual Benefit Association, Inc. (NEMBA), a self-funded employee benefit plan operated by the company for which Schultz's father worked, had paid $46,245.81 toward Schultz's medical expenses and sought reimbursement from the proceeds of the settlement under the subrogation provisions of its plan. Schultz and NEMBA moved for summary judgment and the trial court ruled in NEMBA's favor.

The dispositive issue is whether the reasoning of *Sanders v. Scheideler*, 816 F. Supp. 1338 (W.D. Wis. 1993), *aff'd by unpublished order*, 25 F.3d 1053 (7th Cir. 1994), a federal district court case considering similar issues under the same NEMBA benefit plan, should be applied to reverse the trial court's ruling in this case. We believe it should and we therefore reverse the judgment and remand to the trial court for further proceedings.

NEMBA is a self-funded benefit plan established by the Georgia-Pacific Corporation for its employees and their dependents under the provisions of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461. The plan is administered by an executive committee of its board of directors which is empowered, among other things, to "pass upon all claims by . . . member[s]."[1] The plan contains a subrogation clause which provides as follows: "If the employee is reimbursed for medical expenses incurred as the result of an injury . . . such payments that dupli-

---

[1] The committee's authority in this regard is subject to appeal and review by the board of directors, whose decision in such matters is stated to be "final."

cate benefits paid by NEMBA will be refunded to NEMBA by the employee."[2]

The committee determined that the amount paid by NEMBA for Schultz's medical expenses was recoverable by the plan under this provision, and NEMBA intervened in Schultz's settlement-approval proceedings claiming a subrogation interest in the settlement proceeds in the amount it had contributed to those expenses.

As indicated, both parties moved for summary judgment. The trial court, applying a deferential standard of review to the committee's interpretation of the plan, concluded that the committee had not abused its discretion in determining the applicability of the subrogation clause,[3] and granted NEMBA's motion for summary judgment. In so ruling, the court rejected Schultz's argument that *Sanders*—which, as we have noted, also deals with a subrogation claim under the NEMBA plan—favored a contrary result and the court declined to consider the *Sanders* case.[4]

Schultz argues on appeal that *Sanders* is controlling in that it (1) dictates a de novo, rather than a

[2] The plan limits payments to "reasonable and customary charges" for "medically necessary" treatment, and gives the committee discretionary authority to determine "customary charges." The plan also conditions the receipt of benefits on an assignment of the right to recover such payments by the injured party. Schultz's father executed such an assignment in NEMBA's favor in this case.

[3] The trial court, citing *Fuller v. CBT Corp.*, 905 F.2d 1055, 1058 (7th Cir. 1990), concluded that it could overturn the committee's interpretation "only by finding that [the committee] abused [its] discretion—which is to say, that [it was] not just clearly incorrect but downright unreasonable."

[4] At the time of the trial court's decision, *Sanders* was pending in the Seventh Circuit Court of Appeals.

deferential, standard of review of the committee's determination, and (2) holds that where, as here, the plan itself does not establish any "priority" of the plan's subrogation rights in the event of a competing claim by a member or his or her dependents to the undesignated proceeds of an insurance settlement, subrogation rights will apply only after *all* of the beneficiary's damages have been paid for and the beneficiary has been "made whole" for all of his or her damages. He urges us to adopt the reasoning of the *Sanders* court and reverse.[5]

Because we are persuaded by the district court's reasoning in *Sanders*, we consider the case in some detail. Daniel Scheideler was employed by Georgia Pacific and covered by the NEMBA plan. His wife and four children were injured—some of them severely—in an automobile accident, and NEMBA paid out approximately $157,000 in medical benefits for their care and treatment. *Sanders*, 816 F. Supp. at 1341. As in Schultz's case, the insurer of the other driver, who had conceded liability, tendered its $50,000 policy limits,

---

[5] We note that, generally, we are "bound on the subject of federal law only by the pronouncements of the United States Supreme Court." *State v. Webster*, 114 Wis. 2d 418, 426 n.4, 338 N.W.2d 474, 478 (1983). Because, however, employee benefit plans such as NEMBA are governed by federal statute, we look to applicable federal case law in considering their application and enforcement. *See North Gate Corp. v. North Gate Bowl, Inc.*, 34 Wis. 2d 516, 523, 149 N.W.2d 651, 653-54 (1967) (determining priority of federal tax liens to be resolved by applying federal law). *See also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110 (1989) (ordering courts to develop a federal common law of rights under ERISA benefit plans). Federal court cases are not precedential on issues coming before us. We will, however, adopt the federal court's reasoning in appropriate cases, as we do here.

and the NEMBA executive committee determined that the plan was entitled to subrogation of the full amount of the insurance proceeds. *Id.* at 1342.

Both the Scheideler children and NEMBA sought a declaration of rights from the district court, and the court: (1) ruled that while the NEMBA plan gave the committee broad authority to "pass upon" members' claims, it did not specifically grant the committee discretion to construe ambiguous provisions of the plan and thus the court owed no deference to the committee's decisions but would review them de novo; and (2) adopted a "federal common law . . . rule" that, in cases where an ERISA benefit plan fails to designate "priority rules" for third-party payments and fails to provide its directors the necessary discretion "to construe the plan accordingly," subrogation for medical payments will not be allowed "until the insured is fully compensated for his or her injuries." *Sanders*, 816 F. Supp. at 1346-47. And because the record before the court did not indicate the extent of the Scheideler children's damages, an evidentiary hearing was necessary to determine whether they had, in fact, been fully compensated. *Id.* at 1347.

The first question considered by the *Sanders* court was the appropriate standard of review for decisions made by the NEMBA executive committee. The court began by considering *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989),[6] in which the Supreme

---

[6] We reject NEMBA's argument that *Firestone* is inapposite because it dealt with "benefit determinations" rather than "factual or operational determinations such as are at issue in this case." The *Sanders* court said that although *Sanders* did not involve a denial of benefits, "the [Supreme] Court's reliance [in *Firestone*] on general principles of trust law in establishing the standard of review of a trustees' plan interpretation supports

Court held that a deferential standard of review is appropriate in cases where the plan fiduciaries have " 'discretionary authority to determine eligibility for benefits or to construe the terms of the plan.' " *Sanders*, 816 F. Supp. at 1342 (quoting *Firestone*, 489 U.S. at 115). Applying *Firestone*, the *Sanders* court held that a deferential standard of review is appropriate only where the fiduciary of the plan is given the power under the terms of the plan " 'to construe disputed or doubtful terms . . . .' " *Id.* (quoting *Firestone*, 489 U.S. at 111).[7] The court then turned to the relevant lan-

---

the applicability of *Firestone* to this case." *Sanders*, 816 F. Supp. at 1342 (citing *Baxter v. Lynn*, 886 F.2d 182, 187 (8th Cir. 1989) (applying *Firestone* to dispute over interpretation of subrogation clause in ERISA plan)). There is, as NEMBA suggests, contrary authority in the form of cases limiting *Firestone* to benefit denials, and NEMBA asserts that the Seventh Circuit has yet to decide the issue. Since the filing of NEMBA's brief, however, the Seventh Circuit affirmed the district court's decision in *Sanders* without opinion. *Sanders v. Scheideler*, 25 F.3d 1053 (7th Cir. 1994) (table).

[7] *Compare Fuller*, 905 F.2d at 1058 (where the language of the plan gave directors power "to construe and interpret" its terms) and *Exbom v. Central States,* 900 F.2d 1138, 1141 (7th Cir. 1990) (holding that plan empowered directors to construe its provisions and that such construction adopted in good faith was binding) *with Michael Reese Hosp. and Medical Ctr. v. Solo Cup Employee Health Benefit Plan*, 899 F.2d 639, 641 (7th Cir. 1990) (employing de novo standard of review where plan provides only the authority "to control and manage the operation and administration of the Plan").

The *Sanders* court also referred to cases refusing to infer interpretive discretion from related powers granted to the plan's fiduciaries. *See Adams v. Blue Cross / Blue Shield*, 757 F. Supp. 661, 667 (D. Md. 1991) (explaining that while grant of power to deny benefits arguably confers interpretive discretion,

guage of the plan, noting that, under its terms, the committee had the authority, among other things, to terminate and amend the plan, to make final decisions with respect to proposed settlements, and to "pass upon" and "accept or reject" applications for members. *Id.* at 1341. The court went on to conclude that because the NEMBA plan "does not specifically grant . . . discretion [to the committee] to construe ambiguous provisions of the plan," and because "such discretion [does not] flow from the need to interpret terms in order to give effect to the plan," *id.* at 1343, a de novo standard of review was appropriate.[8] *Id.* at 1344. We agree with that conclusion.

absent clear and unequivocal language no such discretion will be inferred); *Martin v. Masco Indus. Employees' Benefit Plan,* 747 F. Supp. 1150, 1153 (W.D. Pa. 1990) (holding that provision giving committee final authority to determine eligibility is insufficient to support an inference of authority to interpret plan provisions).

[8] In so ruling, the court noted and rejected NEMBA's argument that the committee's authority to "pass upon all claims" and the directors' authority to make "final" decisions on disputed settlements implicitly provided the committee with "interpretive discretion" so as to warrant deferential review of its decisions. *Sanders v. Scheideler,* 816 F. Supp. 1338, 1343 (W.D. Wis. 1993). The court stated:

This language [that the board's decision is "final"] is plainly inadequate to grant the trustees discretionary power to construe the plan's subrogation provision. The plan's grant of final authority in the board is limited to settlements by its own terms, and in any event is not comparable in scope to the plan in *Boyd,* 873 F.2d 57, which extended final authority to "all issues concerning eligibility for benefits" and further provided the power to adopt rules and regulations. By comparison, the "finality" provision in the [N]EMBA plan appears merely to identify the board as the entity responsible for stating the plan's ultimate position in disputed settlements.

The *Sanders* court then went on to independently consider the parties' rights to the insurance proceeds. The court construed the subrogation clause as "limit[ing] the subrogation rights of the fund to the recovery of payments by third parties of medical expenses that duplicate benefits paid by [N]EMBA." *Sanders*, 816 F. Supp. at 1344. The Scheideler parents conceded that insofar as their claims to recover medical expenses, their share of the settlement proceeds "duplicated" NEMBA's payments and would thus be subject to recovery by NEMBA under the subrogation clause of the plan. *Id.* at 1345. However, the insurance proceeds were also tendered in settlement of the nonmedical expense claims of the Scheideler children. And the court concluded that, to the extent that all or part of the insurance payment was allocable to the Scheideler children as compensation for their damages other than medical expenses, there would be no such duplication and thus no subrogation. *Id.*

The problem in *Sanders* was that, because the insurance proceeds were not designated as reimburse-

---

*Id.* at 1344.

NEMBA argues that Schultz "waived" any de novo review argument by failing to make it in the trial court. Schultz disagrees, pointing to the transcript of the parties' oral argument on the motions for summary judgment in which both Schultz and the guardian ad litem argued for a de novo standard of review, and NEMBA's attorney responded. We note, too, that while the district court's decision in *Sanders* had been released several weeks prior to the argument, it had not yet been affirmed by the Seventh Circuit. Further, the waiver rule is one of administration, not of right, and we will, in a proper case, decline to apply it. *County of Columbia v. Bylewski*, 94 Wis. 2d 153, 171-72, 288 N.W.2d 129, 139 (1980). We elect to do so here.

ment for any particular expense or damages, the court could not determine from the record how the insurance proceeds were intended to be allocated, and the record was similarly silent as to the nature and extent of the children's damages. *Sanders*, 816 F. Supp. at 1345. And because the plan's subrogation clause did not address the priority of NEMBA's rights with respect to "competing claim[s] . . . to the undesignated proceeds of a limited insurance settlement," the *Sanders* court faced the problem of attempting to ascertain such a priority. *Id.* After discussing several alternatives, the court looked to the common-law rule in Wisconsin—the "make-whole doctrine" of *Rimes v. State Farm Mut. Auto. Ins. Co.*, 106 Wis. 2d 263, 271-72, 316 N.W.2d 348, 353 (1982), that states that an insurer cannot assert a subrogation right until the insured is fully compensated for his or her injuries[9]—and adopted the rule as "federal common law," which would apply in cases where a plan fails to designate priority rules or provide its fiduciaries the discretion necessary to construe the plan accordingly. *Sanders*, 816 F. Supp. at 1346-47. As we have noted above, because of the lack of information as to whether any or all of the Scheideler children had been fully reimbursed by the $50,000 payment, the *Sanders* court set the case for further hearing on that issue. *Id.* at 1347.

We agree with the *Sanders* court's assessment of the NEMBA plan and the need to fashion a remedy for

[9] As the *Sanders* court noted, *Rimes* not only is a Wisconsin rule but represents the majority position in state courts across the country. *Sanders*, 816 F. Supp. at 1346. *See also* ALLAN D. WINDT, INSURANCE CLAIMS AND DISPUTES § 10.06, at 533 (2d ed. 1988); ROBERT E. KEETON and ALAN I. WIDISS, INSURANCE LAW § 3.10, at 236 (1988).

such situations. We also agree that the Wisconsin make-whole rule is an appropriate vehicle for making these determinations in cases where, under the reasoning in *Sanders*, it is appropriate to do so.[10] And we note that at least one other state court has followed *Sanders* under similar circumstances. *See Blue Cross/Blue*

---

[10] NEMBA argues that because ERISA preempts state subrogation rules, it is improper to "incorporate [a] state anti-subrogation common law doctrine [such as the *Rimes* make-whole rule] into federal common law," as the *Sanders* court did. First, as we have indicated, *Sanders* has been affirmed (without opinion) by the Court of Appeals for the Seventh Circuit. Second, as the *Sanders* court noted, application of the "make-whole doctrine" would not dictate or supplant the terms of a plan, but is a "default rule" which would only apply where a plan "fails to designate priority rules or provide its fiduciaries the discretion necessary to construe the plan accordingly." *Sanders*, 816 F. Supp. at 1347. The court also noted that "the plan and its beneficiaries could avoid the application of th[e] doctrine by agreeing to designate the insurance proceeds." *Id.*

Finally, we disagree with NEMBA that *FMC Corp. v. Holliday*, 498 U.S. 52 (1990), is dispositive of the issue. *Holliday* held that a Pennsylvania statute that completely barred subrogation in automobile accident cases with respect to benefits payable by "[a]ny program, group contract or other arrangement" was preempted by ERISA because to allow Pennsylvania to deny subrogation for ERISA-plan benefits would be to create a " 'patchwork scheme of regulation' " across the country which " 'would introduce considerable inefficiencies' " as a result of differing regulations. *Id.* at 55, 60 (quoting *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 11 (1987)). Because we agree with the *Sanders* court's discussion of the limited applicability of the rule we adopt—and the ability of plans and their beneficiaries to avoid application of the rule by including appropriate provisions in their agreements—we think future parties will avoid the problems cited by *Holliday* in justification of its preemption ruling in that case.

*Shield v. Flam*, 509 N.W.2d 393, 398-99 (Minn. Ct. App. 1993).

As in *Sanders*, however, Schultz has not directed us to any evidentiary material in the record to indicate that his nonmedical-expense damages exceed the $100,000 payment from State Farm. If they do, there is no subrogation because the payment will not make him whole and NEMBA's contribution to his medical expenses would not be "duplicated" within the meaning of the plan's subrogation clause. If, however, Schultz would be made whole for his nonmedical expenses by some figure less than $100,000, the remaining portion of the payment would be duplicative and subject to NEMBA's subrogation claim. It may be that there is no dispute that damages for Schultz's nonmedical expenses exceed $100,000. If that is so, the trial court can enter judgment in Schultz's favor without further hearing. If, however, there is a dispute in that regard, the trial court will have to take evidence on the subject and make the appropriate determination, as the district court did in *Sanders*.

*By the Court.*—Judgment reversed and cause remanded for further proceedings.