Michael W. Bruzas, Constance K. Bruzas and Christopher A. Bruzas, Plaintiffs,

v.

Cipriano Quezada-Garcia and Elida Torres, Defendants,

American Family Mutual Insurance Company, Defendant-Appellant,†

Employers Insurance of Wausau, Subrogated Party,

Underwriters Laboratories, Inc., Subrogated Party-Respondent.

Court of Appeals

*No. 00–0043. Submitted on briefs July 31, 2000.—Decided February 6, 2002.*

2002 WI App 57

(Also reported in 642 N.W.2d 207.)

† Petition to review denied 6-11-02.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Thomas M. Devine* and *JoAnne Breese-Jaeck* of *Hostak, Henzl & Bichler, S.C.,* of Racine.

On behalf of the subrogated party-respondent, the cause was submitted on the brief of *Thomas H. Koch* of *Wille, Gregory & Lunden* of Milwaukee.

Before Nettesheim, P.J., Brown and Snyder, JJ.

¶ 1.  NETTESHEIM, P.J.  Underwriters Laboratories, Inc., (Underwriters) is a self-funded insurer under the Employee Retirement Income and Security Act, 29 U.S.C. §§ 1001–53, otherwise known as ERISA. The issue in this case is whether Underwriters is entitled to subrogation from American Family Mutual Insurance Company for medical payments it made on behalf of its plan participant, Michael W. Bruzas. The

trial court concluded that it was and, by declaratory judgment, ordered American Family to reimburse Underwriters in the amount of $16,373.89.

¶ 2.   We uphold the trial court's decision. We conclude that the determination of Underwriters' Plan Administrator that it is entitled to subrogation is due substantial deference on appeal. We further conclude that the plan administrator did not act unreasonably in asserting its right to subrogation under its plan language and, as such, we are bound by the Plan Administrator's determination.

## FACTS

¶ 3.   The relevant facts of this case are recited in a stipulation by which the parties narrowed the issues for the trial court.

¶ 4.   We begin with the ERISA plan. Underwriters established a self-insured health benefits plan for its employees under ERISA. The plan creates a "Pension Finance and Benefits Committee" (Committee) which serves as the "Plan Administrator" as that position is defined in Section 3(16)(A) of ERISA. This Committee, in turn, appoints a "Claims Administrator" who is empowered to "initially determine the entitlement of Participants to receive benefits hereunder."[1]

¶ 5.   Besides the authority to appoint the Claims Administrator, the Committee holds additional powers important to this case. The Committee "shall have the power to construe and interpret the Plan provisions and to determine all questions arising under the Plan."

---

[1] This authority is restated in a later section of the plan as follows: "The Claims Administrator shall initially determine all rights of Participants and Participating Dependents to benefits hereunder."

In addition, the Committee "shall have the power to hear and decide appeals from determinations of the Claims Administrator as to the rights of Participants and Participating Dependents to benefits under the Plan."

¶ 6. Finally, the plan includes a right of subrogation to Underwriters which states:

> If a Covered Person recovers any Covered Expenses from a third party in a legal action, or otherwise, then the Plan shall be subrogated to the rights and claims of such Covered Person to the extent of reimbursements hereunder with respect to such Covered Expenses.

¶ 7. Next, we address the events that produced this litigation. Michael W. Bruzas was an Underwriters employee. On May 7, 1994, Michael, his wife Constance, and their son Christopher were injured in an automobile accident caused solely by the negligence of Cipriano Quezada-Garcia. Pursuant to its ERISA plan, Underwriters paid $16,373.89 of Michael's medical expenses resulting from the accident.

¶ 8. The Bruzases sued Quezada-Garcia and American Family, the liability insurer of the Quezada-Garcia vehicle. The Bruzases also named Underwriters as an additional defendant because of its potential subrogation claims. Eventually, American Family paid its coverage limits to settle the Bruzases' claims. Under this settlement, Michael received $40,000—far less than his actual damages. Thus, the parties agree that Michael has not been made whole within the meaning of *Rimes v. State Farm Mutual Automobile Insurance Co.*, 106 Wis. 2d 263, 316 N.W.2d 348 (1982).

¶ 9. American Family also insured Michael. Pursuant to the underinsurance provisions of this policy, American Family paid Michael an additional $57,056.61.[2]

¶ 10. Under this settlement, Underwriters preserved its right to seek subrogation pursuant to the terms of its ERISA plan. Since this left Michael at risk if Underwriters prevailed on its subrogation claim, American Family agreed that it would hold Michael harmless for any payments he was required to make to Underwriters. Thus, Michael is not at financial risk in this case and he does not participate in this appeal.

¶ 11. The effect of the parties' stipulation was to "preserve all legal arguments concerning the rights of . . . Underwriters to assert claims against [the liability policy that American Family had issued to Quezada-Garcia] and/or the [underinsurance provisions of the policy that American Family had] issued to Michael Bruzas." Thus, the parties' stipulation created a test case on this issue. To that end, American Family and Underwriters asked the trial court for declaratory relief pursuant to WIS. STAT. § 806.04 (1999–2000).[3] After

[2] Unlike the $40,000 American Family payment to Michael under the liability policy covering the Quezada-Garcia vehicle, the parties' stipulation does not expressly state whether this additional underinsurance payment by American Family made Michael whole. However, the tenor of the appellate briefs and the oral arguments before this court appear to presume that Michael was not made whole by the totality of the American Family payments. Underwriters' position is not that Michael was made whole, but rather that the "make whole" doctrine does not apply in this ERISA setting.

[3] All references to the Wisconsin Statutes are to the 1999–2000 version.

reviewing the parties' written briefs, the court ruled that Underwriters was entitled to subrogation. American Family appeals.

## DISCUSSION

### *Standard of Review*

¶ 12.    Pursuant to Wisconsin's "make whole" doctrine as set forth in *Rimes*, an insurer is not entitled to reimbursement until the insured has been compensated for his or her entire loss. *Rimes*, 106 Wis. 2d at 272. The ultimate issue in this case is whether Underwriters' right of subrogation under its ERISA plan preempts the "make whole" doctrine. American Family argues for various reasons that it does not.[4] However, before addressing the parties' arguments on that issue, we must first resolve the threshold issue regarding the appropriate standard of review to be applied to an ERISA plan administrator's determination.[5]

---

[4] Specifically, American Family argues:  (1) the subrogation provision of the plan does not extend to the payments received by Michael; (2) the subrogation provision is deficient because it does not recite a priority of payments; (3) American Family's policy specifically excludes subrogated insurers from coverage; and (4) the right to subrogation unconstitutionally infringes upon the insurance contract between American Family and Michael.

[5] We note that we certified this issue to the Wisconsin Supreme Court on November 15, 2000. The supreme court accepted certification. However, following oral arguments, the supreme court issued a per curiam decision dismissing the certification as "improvidently granted." The decision notes that Underwriters had conceded at oral argument that its Plan Administrator "has not in fact issued a determination or inter-

¶ 13.  There are two Wisconsin Court of Appeals decisions on this subject, *Newport News Shipbuilding Co. v. T.H.E. Insurance Co.*, 187 Wis. 2d 364, 523 N.W.2d 270 (Ct. App. 1994), and *Schultz v. Nepco Employees Mutual Benefit Ass'n, Inc.*, 190 Wis. 2d 742, 528 N.W.2d 441 (Ct. App. 1994). While both decisions agree that the answer lies in the language of the particular ERISA plan, the cases are ambiguous as to the kind of plan language necessary to preserve the subrogation right and to afford deference to the plan administrator's determination.

¶ 14.  In *Newport News*, an employee covered under the employer's self-funded ERISA plan was injured in a fireworks accident. *See Newport News*, 187 Wis. 2d at 368. The plan paid the employee's medical bills. The employee settled with the tortfeasor; however, the settlement did not make the employee whole. The settlement agreement provided that the tortfeasor would be responsible for any subrogated claims. The employer made a subrogation claim pursuant to the language of its plan. The trial court granted the subrogation claim. *See id.* at 368–70.

---

pretation of the plan's subrogation clause." While we appreciate this language by the supreme court, we do not consider ourselves bound by it. The court was merely explaining why it believed that it had improvidently accepted certification. The court's language was not uttered in an opinion substantively addressing either the facts or the law relevant to the case. While we agree that there is no document expressly setting forth the plan administrator's decision, the position taken by the Plan Administrator is self-evident in the actions taken by the Committee which serves as the Plan Administrator and in the conduct of Underwriters' legal team defending that action.

¶ 15. The court of appeals upheld the right of subrogation. The court observed that "[s]ubrogation provisions of self-funded ERISA plans trump state subrogation rules." *Id.* at 371 (citing *FMC Corp. v. Holliday*, 498 U.S. 52, 58–65 (1990)). Thus, the court concluded that the " 'make whole' rule must be found, if found at all, in the federal common law applicable to ERISA." *Newport News*, 187 Wis. 2d at 371 (citing *Cutting v. Jerome Foods, Inc.*, 993 F.2d 1293, 1296–97 (7th Cir.), *cert. denied*, 114 S. Ct. 308 (1993)). The court further concluded that the federal right to be made whole "exists only when the parties are silent." *Newport News*, 187 Wis. 2d at 371 (citing *Cutting*, 993 F.2d at 1297).

¶ 16. The court of appeals then examined the language of the plan to determine if the plan was "silent." Although the plan did not expressly address "make whole" principles, the court noted that the plan vested discretion in the plan administrator to interpret the plan and that the administrator's good faith interpretations were final and conclusive. Thus, the court concluded that the plan was not "silent" on the question of "make whole." *See id.* at 371–72. In light of that, the court concluded that it was required to give substantial deference to the interpretation of an ERISA plan by the plan administrator unless the interpretation was unreasonable. *See id.* at 372. Because the employer had consistently enforced its subrogation rights under its ERISA plan and because the "make whole" doctrine, although the law in Wisconsin, was not universal, the court concluded that the plan administrator's enforcement of the subrogation right was not unreasonable. *See id.*

¶ 17. We turn next to the later court of appeals decision in *Schultz*, issued only four months after

457

*Newport News.*[6] In *Schultz*, a dependent of an employee covered under the employer's self-funded ERISA plan was injured in an accident. The employer paid $46,245.81 toward the dependent's medical expenses. The tortfeasor's insurer paid its policy limits of $100,000 to the dependent. The employer made a subrogation claim against these proceeds pursuant to the subrogation right recited in the plan document. The trial court upheld the subrogation claim. *See Schultz*, 190 Wis. 2d at 743–44.

¶ 18. The court of appeals reversed, relying principally on *Sanders v. Scheideler*, 816 F. Supp. 1338 (W.D. Wis. 1993), *aff'd by unpublished order*, 25 F.3d 1053 (7th Cir. June 1, 1994) (No. 93–3044).[7] In *Sanders*, the federal district court had interpreted the very same plan at issue in *Schultz*. *See Schultz*, 190 Wis. 2d at 744. Echoing the *Newport News* approach, but not citing the case, the *Schultz* court acknowledged that a deferential standard of review is appropriate in cases where the plan administrator has "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Schultz*, 190 Wis. 2d at 748 (citation omitted). The court concluded that such discretion is conferred where the plan grants power "to construe disputed or doubtful terms." *Id.* (citation omitted).

¶ 19. The *Schultz* court then looked to the language of the plan that authorized the plan administrator to "pass upon all claims by . . . members" and gave the administrator authority to terminate and amend

---

[6] *Schultz v. Nepco Employees Mutual Benefit Ass'n, Inc.*, 190 Wis. 2d 742, 528 N.W.2d 441 (Ct. App. 1994), does not cite to or address *Newport News Shipbuilding Co. v. T.H.E. Insurance Co.*, 187 Wis. 2d 364, 523 N.W.2d 270 (Ct. App. 1994).

[7] The court also remanded for a "make whole" hearing. *See Schultz*, 190 Wis. 2d at 753.

the plan, to make final decisions with respect to proposed settlements, and to "pass upon" and "accept or reject" applications for members. *Id.* at 744, 749.[8] The court concluded that this language "did not *specifically* grant the committee discretion to construe ambiguous provisions of the plan." *Id.* at 747 (emphasis added). Therefore, the court concluded that it "owed no deference to the committee's decisions but would review them de novo." *Id.* In so holding, the court rejected the employer's related argument that the administrator's authority to "pass upon all claims" and the director's authority to make "final" decisions on disputed settlements served to vest the administrator with "interpretive discretion." *Id.* at 749 n.8 (citation omitted).

¶ 20.   Although Underwriters' ERISA plan in this case does not expressly use the term "discretion," the grant of authority to the Plan Administrator is nonetheless very broad. The Claims Administrator, which is a subset of the Committee as the Plan Administrator, is authorized to "initially determine the entitlement of Participants to receive benefits hereunder." Moreover, the Committee has "the power to construe and interpret the Plan provisions and to determine all questions arising under the Plan." In addition, the Committee, which serves as the appellate tribunal over the determinations of the Claims Administrator, has the power to determine the "rights of Participants and Participating Dependents to benefits under the Plan."

---

[8] Actually, the powers we have enumerated come from the plan in *Sanders v. Scheideler*, 816 F. Supp. 1338 (W.D. Wis. 1993), *aff'd by unpublished order*, 25 F.3d 1053 (7th Cir. June 1, 1994) (No. 93–3044). But since the *Sanders* plan was the same as the one before the court in *Schultz*, we conclude that the *Schultz* plan recited the same language.

¶ 21. Given this broad language, we conclude that the Plan Administrator has the requisite discretion contemplated by *Newport News*, even though the plan language does not use that express term. We take particular note that *Newport News* does not say that an express grant of discretion is necessary before judicial deference is required.

¶ 22. While we recognize that the *Schultz* court provides a different analysis regarding the deference to be given a plan administrator's interpretation, we conclude that the better-reasoned analysis is provided in *Newport News*. *See State v. Kuehl*, 199 Wis. 2d 143, 149, 545 N.W.2d 840 (Ct. App. 1995) (faced with two conflicting court of appeals decisions, "we are free to follow the decision which we conclude is correct"). We do so based on our determination that *Schultz* places an unreasonable burden upon an ERISA plan by requiring the use of specific wording to convey the discretion to the plan administrator that is otherwise clearly conveyed by equivalent language in this case. Consistent with our holding in *Newport News*, we afford substantial deference to the determination of Underwriters' Plan Administrator.

¶ 23. Here, Underwriters' Plan Administrator determined that it was entitled to reimbursement from American Family based on the plan language, including its subrogation clause. As in *Newport News*, we cannot conclude that the plan is silent as to subrogation. Nor can we conclude that the Plan Administrator acted unreasonably in asserting Underwriters' right of subrogation. We therefore need not reach the parties' arguments pertaining to the plan language. *See Fons v. Hotel Employees and Rest. Employees Int'l Union*, 1991

WL 340288, 3 (E.D. Mich. 1991) (mem.) (Having determined the plan's actions were not arbitrary and capricious, the court declined to determine which party had misconstrued the plan's language.). We uphold the trial court's judgment.

## CONCLUSION

¶ 24. We conclude that Underwriters' Plan Administrator's determination that Underwriters was entitled to subrogation from American Family for expenses paid on behalf of the Bruzas family was not unreasonable and, therefore, we are bound by it. *Newport News*, 187 Wis. 2d at 372. We affirm the trial court's judgment.[9]

*By the Court.*—Judgment affirmed.

---

[9] As indicated by the supreme court's previous acceptance of our certification in this case, this case is worthy of supreme court review. Such review would also allow the supreme court to address whether our approach of adopting the better reasoned of conflicting court of appeals decisions comports with *Cook v. Cook*, 208 Wis. 2d 166, 185–90, 560 N.W.2d 246 (1997).